UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
G&A STRATEGIC INVESTMENTS I LLC,   :
G&A STRATEGIC INVESTMENTS II LLC,  :
G&A STRATEGIC INVESTMENTS III LLC, :
G&A STRATEGIC INVESTMENTS IV LLC,  :
G&A STRATEGIC INVESTMENTS V LLC,   :
G&A STRATEGIC INVESTMENTS VI LLC,  :
and                                :
G&A  STRATEGIC  INVESTMENTS  VII   :
LLC,                               :
    Plaintiffs,               :
          :
   -v-                         :
          :
PETRÓLEOS  DE  VENEZUELA,  S.A.  and :
PDVSA Petróleo S.A.,               :
          :
    Defendants.              :
          :
------------------------------------------------------- X

Case No. 1:23-cv-10766-JSR
[Rel. No. 1:23-cv-10772-JSR]

**PETRÓLEOS DE VENEZUELA, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO VACATE DEFAULT JUDGMENT</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................... 1

II.   BACKGROUND .......................................................................................................... 2

  a.   The Illegitimate Nicolás Maduro Regime Versus The Democratically
       Elected 2015 National Assembly ...................................................................... 2

       i.    In opposition to Nicolás Maduro's authoritarian government, the
             Venezuelan people elect the 2015 National Assembly, which
             declares Maduro's presidency illegitimate. ............................................ 2

       ii.   Interim President Juan Guaidó appoints an ad hoc board to manage
             Venezuela's state-owned oil company, PDVSA. ..................................... 5

       iii.  Since August 2023, the National Assembly and the Ad Hoc Board
             have been working to restructure debt held by Venezuela and
             PDVSA. .................................................................................................... 5

  b.   Factual and Procedural History of This Action .................................................. 7

       i.    Plaintiffs purchase promissory note issued by PDVSA and initiate
             action against PDVSA for breach of contract. ........................................ 7

       ii.   Plaintiffs move for default judgment against PDVSA. ............................ 8

III.  LEGAL STANDARD ................................................................................................ 9

IV.   ARGUMENT ............................................................................................................ 10

  a.   The Expedited Default Proceeding Deprived PDVSA of a Reasonable
       Chance to be Heard ......................................................................................... 10

  b.   The Default Judgment is Void Under F.R.C.P. 60(b)(4) Because The
       Court Lacks Personal Jurisdiction Over PDVSA ............................................ 11

       i.    Default judgment based on jurisdictional error is void as a matter
             of law. .................................................................................................... 11

       ii.   Because PDVSA is a foreign instrumentality, the Court's
             jurisdiction over PDVSA is determined by the FSIA. ........................... 12

       iii.  Plaintiffs failed to serve PDVSA in accordance with the FSIA. .......... 15

       iv.   Due to Plaintiffs' failure to comply with the FSIA's service
             mandates, the Court lacks personal jurisdiction over PDVSA. ............. 18

  c.   In the Alternative, the Default Judgment Should be Vacated Under
       F.R.C.P. 60(b)(6) ............................................................................................ 19

       i.    PDVSA did not willfully default. .......................................................... 19

       ii.   PDVSA intends to assert meritorious defenses. .................................... 20

ii

|  |  | 1. | Plaintiffs lack standing because their purchase of the Notes violates New York's champerty statute | 21 |

| | | 2. | Some of Plaintiffs' claims are time-barred | 23 |

| | iii. | | Vacating default would not prejudice Plaintiffs. | 23 |

| V. | CONCLUSION | | | 24 |

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. All. Ins. Co. v. Eagle Ins. Co.*,
  92 F.3d 57 (2d Cir. 1996) ......................................................................................... 26

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989) .................................................................................................. 17

*Attar v. Glass*,
  2022 WL 17095248 (S.D.N.Y. Nov. 21, 2022) ........................................................ 14

*Bainbridge Fund Ltd. v. Republic of Argentina*,
  37 F.4th 847 (2d Cir. 2022) (citing N.Y. C.P.L.R. § 213) ........................................ 29

*Bartlett v. Baasiri*,
  81 F.4th 28 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1456 (2024) ............................ 17

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*,
  735 F.3d 72 (2d Cir. 2013) ....................................................................................... 17

*Chettri v. Nepal Bangladesh Bank, Ltd.*,
  2014 WL 4354668 (S.D.N.Y. Sept. 2, 2014)................................................. 18, 19, 20

*Chettri v. Nepal Rastra Bank*,
  834 F.3d 50 (2d Cir. 2016) ....................................................................................... 18

*Cho v. Osaka Zen Spa*,
  2023 WL 5003570 (S.D.N.Y. Aug. 4, 2023).............................................................. 24

*Concord Reinsurance Co. v. Caja Navional De Ahorro Y Seguro*,
  1994 WL 86401 (S.D.N.Y. Mar. 16, 1994) .............................................................. 22

*Doe v. Fed. Republic of Germany*,
  2023 WL 6785813 (S.D.N.Y. Oct. 13, 2023) ........................................................... 18

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)............................................................................................ 16, 17

*Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*,
  2019 WL 3242585 (S.D.N.Y. July 3, 2019) ............................................................. 15

*Enron Oil Corp. v. Diakuhara*,
  10 F.3d 90 (2d Cir. 1993) .......................................................................... 12, 13, 14, 26

*Erwin DeMarino Trucking Co. v. Jackson*,
  838 F. Supp. 160 (S.D.N.Y. 1993) ........................................................................... 13

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*,
  2005 WL 1123755 (S.D.N.Y. May 11, 2005) .......................................................... 21

*Glob. Gold Mining, LLC v. Ayvazian*,
  612 F. App'x 11 (2d Cir. 2015) ................................................................................ 25

*Glob. Gold Mining, LLC v. Ayvazian*,
    983 F. Supp. 2d 378 (S.D.N.Y. 2013), *aff'd in part, modified in part sub nom.* 612 Fed.
    App'x 11 (2d Cir. 2015) ........................................................................................... 25

*In re Terrorist Attacks on Sept. 11, 2001*,
    2022 WL 1088567 (S.D.N.Y. Apr. 5, 2022) ............................................................. 19

*Irvin v. Harris*,
    944 F.3d 63 (2d Cir. 2019) ...................................................................................... 15

*Jeremiah v. 5 Towns Jewish Times, Inc.*,
    2023 WL 6593997 (E.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*,
    2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023) ...................................................... 12, 13

*Jimenez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd*, 237 A.3d 68
    (Del. 2020) ........................................................................................................... 6, 7

*Johnson v. New York Univ.*,
    324 F.R.D. 65 (S.D.N.Y. 2018), *aff'd*, 800 F. App'x 18 (2d Cir. 2020) ............ 25, 26

*Justinian Cap. SPC v. WestLB AG*,
    65 N.E.3d 1253 (N.Y. 2016) ............................................................................. 26, 28

*Loc. 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Const., Inc.*,
    2003 WL 22052872 (S.D.N.Y. Sept. 2, 2003) ................................................... 15, 23

*M.V.B. Collision Inc. v. Allstate Ins. Co.*,
    No. 22783/08 (Nassau Dist. Ct. July 16, 2009) ...................................................... 27

*Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*,
    2004 WL 1574732 (S.D.N.Y. July 13, 2004) .......................................................... 20

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981) ............................................................................ 12, 14

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017) .............................................................................. 17, 23

*Murray Eng'g, P.C. v. Windermere Prop. LLC*,
    2013 WL 1809637 (S.D.N.Y. Apr. 30, 2013) ......................................................... 30

*Pharo Gaia Fund, Ltd. v. Petroleos de Venezuela, S.A.*,
    2024 WL 917608 (S.D.N.Y. Mar. 4, 2024) ............................................................. 23

*Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*,
    2021 WL 4515256 (2d Cir. Oct. 4, 2021) ............................................................... 27

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    612 F. Supp. 3d 263 (S.D.N.Y. 2020) .............................................................. 27, 28

*Pinnacle Madison Ave. Corp. v. Italian Trade Agency*,
    2022 WL 20472090 (S.D.N.Y. Sept. 30, 2022) ...................................................... 22

*Recyclers Consulting Group, Inc. v. IBM-Japan, Ltd.*,
    1997 WL 615014 (S.D.N.Y. Oct. 3, 1997) .............................................................. 21

*Sakhrani v. Takhi*,
   1997 WL 33477654 (S.D.N.Y. Sept. 10, 1997) ....................................................... 20

*Sce v. Ach*,
   56 AD3d 457 (2d Dep't 2008) ............................................................................... 29

*Skanga Energy & Marine Ltd. v. Arevenca, S.A.*,
   2014 WL 3928704 (S.D.N.Y. Aug. 12, 2014) ....................................................... 16

*Tiger Sugar Franchise USA Inc. v. Win Luck Trading Inc.*,
   2024 WL 1513599 (E.D.N.Y. Mar. 19, 2024), *report and recommendation adopted*,
   2024 WL 1513680 (E.D.N.Y. Apr. 8, 2024) ......................................................... 13

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148  (D.C. Cir. 1994) ............................................................................... 16

*United States v. Manhattan Cent. Cap. Corp.*,
   2001 WL 902573 (S.D.N.Y. July 26, 2001) ......................................................... 24

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ............................................................................................. 14

*Weingeist v. Tropix Media & Ent.*,
   2022 WL 970589 (S.D.N.Y. Mar. 30, 2022) ..................................... 12, 20, 24, 30

## Statutes

28 U.S.C. § 1330 ................................................................................................................ 1

28 U.S.C. § 1330(a)–(b) .................................................................................................. 14

28 U.S.C. § 1441 ................................................................................................................ 1

28 U.S.C. § 1602–11 .......................................................................................................... 1

28 U.S.C. § 1603(b) .......................................................................................................... 13

28 U.S.C. § 1608(b) .................................................................................................... 14, 15

28 U.S.C. § 1608(b)(1) ...................................................................................................... 14

28 U.S.C. § 1608(b)(2) ...................................................................................................... 14

28 U.S.C. § 1608(b)(3) ............................................................................................ 9, 14, 17

28 U.S.C. § 1608(d) .......................................................................................................... 11

## Other Authorities

Betilde Muñoz-Pogossian & Alexandra Winkler, *The Persistence of the Venezuelan
   Migrant and Refugee Crisis*, CTR. FOR STRATEGIC & INT'L STUD. (Nov. 27, 2023),
   https://www.csis.org/analysis/persistence-venezuelan-migrant-and-refugee-crisis .................. 2

Bradley A. Freden, Deputy Permanent Representative of the U.S., U.S. Mission to the
   Org. of Am. States, Remarks at the Special Permanent Council Meeting:  OAS
   Resolution Condemns the Fraudulent Elections in Venezuela (Dec. 9, 2020),

https://usoas.usmission.gov/oas-resolution-condemns-the-fraudulent-elections-in-venezuela ................................................................................................................ 3

CLARE RIBANDO SEELKE, CONG. RSCH. SERV., IF10715, VENEZUELA: OVERVIEW OF U.S.
SANCTIONS POLICY (2024), available at
https://crsreports.congress.gov/product/pdf/IF/IF10715 .................................... 7, 21

*Corporate Governance*, PDVSA,
http://www.pdvsa.com/index.php?option=com_content&view=article&id=6558&Itemi
d=891&lang=en (last visited July 30, 2024)............................................................ 7

Eliza Mackintosh, *European Nations Recognize Juan Guaido as Venezuela's Interim
President*, CNN (Feb. 4, 2019), https://www.cnn.com/2019/02/04/americas/europe-
guaido-venezuela-president-intl/index.html ............................................................... 5

N.Y. Jud. Law § 489 (2004) ................................................................................... 26, 28

National Assembly of Venezuela, *Acuerdo Reiterando el Desconocimiento de la Farsa
Realizada el 20 de Mayo de 2018 para la Supuesta Elección del Presidente de la
República* [Agreement Reiterating the Refusal to Acknowledge the Farce Realized on
May 20, 2018 for the Alleged Election of the President of the Republic], (May 22,
2018) https://www.asambleanacionalvenezuela.org/actos/detalle/acuerdo-reiterando-el-
desconocimiento-de-la-farsa-realizada-el-20-de-mayo-de-2018-para-la-supuesta-
eleccion-del-presidente-de-la-republica-275 ......................................................... 4, 5

Press Release, Heather Nauert, Dep't Spokesperson, U.S. Embassy & Consulate in
Ecuador, Venezuela's Illegitimate National Constituent Assembly (Aug. 3, 2017),
https://ec.usembassy.gov/venezuelas-illegitimate-national-constituent-assembly/................... 4

Press Release, Michael R. Pompeo, Sec'y of State, Recognition of Juan Guaido as
Venezuela's Interim President (Jan. 23, 2019), https://2017-2021.state.gov/recognition-
of-juan-guaido-as-venezuelas-interim-president/#:~:text=Washington%2C%20DC-
,January%2023%2C%202019,in%20restoring%20democracy%20to%20Venezuela ............... 5

Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, U.S. Recognition of
Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022),
https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-
interim-president-guaido/............................................................................................ 6

Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim
Government and the 2015 National Assembly (Jan. 3, 2023),
https://www.state.gov/venezuelas-interim-government-and-the-2015-national-
assembly/ ................................................................................................................ 2, 3

Press Release, Off. of the Press Sec'y, U.S. Embassy & Consulate in Ecuador, Statement
from President Donald J. Trump Recognizing Venezuelan National Assembly
President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019), ....................... 5

Press Release, Off. of the Spokesperson, U.S. Dep't of State, The United States Takes
Action Against Corrupt Maduro Regime Officials (June 27, 2019),
https://uy.usembassy.gov/the-united-states-takes-action-against-corrupt-maduro-
regime-officials/........................................................................................................ 6

*Service of Process*, CORPORATION SERVICE COMPANY,
   https://www.cscglobal.com/service/entity-solutions/registered-agent-services/service-
   of-process/ ................................................................................................................. 19

Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License
   No. 31B:  Certain Transactions Involving the IV Venezuelan National Assembly and
   Certain Other Persons (Jan. 9, 2023),
   https://ofac.treasury.gov/media/930241/download?inline ..................................................... 3, 8

*The Reality of PDVSA Ad Hoc*, PDVSA AD HOC, https://pdvsa-adhoc.com/en/the-reality-
   of-pdvsa-ad-hoc/ (last visited July 30, 2024) ........................................................................ 7

U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., Venezuela Human Rights
   Practices Report (2023) § 3, available at https://www.state.gov/reports/2023-country-
   reports-on-human-rights-practices/venezuela/ ...................................................................... 4

*U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S.
   DEP'T OF STATE: BUREAU OF W. HEMISPHERE AFFS., https://2017-2021.state.gov/u-s-
   government-support-for-the-democratic-aspirations-of-the-venezuelan-
   people/index.html (last visited July 30, 2024) .................................................................. 2, 6

*Venezuela Creditor Committee Files Summons With Notice and Stipulation of Dismissal*,
   CLEARY GOTTLIEB (Oct. 11, 2023), https://www.clearygottlieb.com/news-and-
   insights/news-listing/venezuela-creditor-committee-files-summons-with-notice-and-
   stipulation-of-dismissal ........................................................................................................ 9

*Venezuela:  A Democratic Crisis*, U.S. Dep't of State: Bureau of W. Hemisphere Affs.,
   https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis (last visited July
   30, 2024) ............................................................................................................................ 4, 5

*What Has Venezuela's Constituent Assembly Achieved?*, BBC NEWS (Aug. 30, 2017),
   https://www.bbc.com/news/world-latin-america-41094889 ..................................................... 3

William Neuman & Nicholas Casey, Venezuela Election Won by Maduro Amid
   Widespread Disillusionment, N.Y. TIMES (May 20, 2018),
   https://www.nytimes.com/2018/05/20/world/americas/venezuela-election.html ..................... 4

## Rules

Fed. R. Civ. P. 55(b) ........................................................................................................... 10

Fed. R. Civ. P. 55(c) ............................................................................................................. 9

Fed. R. Civ. P. 60(b) ............................................................................................................. 9

Fed. R. Civ. P. 60(b)(4) ................................................................................................... passim

Fed. R. Civ. P. 60(b)(6) ....................................................................................... 1, 9, 19, 23

## I.    __INTRODUCTION__

In an affront to procedural due process, Plaintiffs[1] obtained a default judgment for over $1,500,000,000.00 against Petróleos de Venezuela ("PDVSA") notwithstanding their failure to establish the Court's personal jurisdiction over PDVSA.  As an instrumentality of the Bolivarian Republic of Venezuela ("Venezuela"), PDVSA is subject to the protections of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1441, 1602 – 11  (the "FSIA"), including prescribed service of process.  Plaintiffs, however, failed to comply with the FSIA's service requirements, thereby depriving PDVSA of its right to defend itself against Plaintiffs' claims.

Had Plaintiffs given PDVSA actual notice of this action, PDVSA would have protected its interests as it has in the face of litigation with numerous creditors that are similarly situated to Plaintiffs.  Indeed, upon discovering the default judgment against it, PDVSA acted promptly to present meritorious defenses based on Plaintiffs' lack of standing to bring this action in the first place and the fact that certain of Plaintiffs' claims are time-barred.

Accordingly, PDVSA respectfully requests that the Court vacate the default judgment as void for lack of personal jurisdiction under Federal Rule of Civil Procedure ("F.R.C.P.") 60(b)(4). In the alternative, PDVSA seeks vacatur under F.R.C.P. 60(b)(6).

---

[1] G&A Strategic Investments I LLC, G&A Strategic Investments II LLC, G&A Strategic Investments III LLC, G&A Strategic Investments IV LLC, G&A Strategic Investments V LLC, G&A Strategic Investments VI LLC, and G&A Strategic Investments VII LLC (collectively, "Plaintiffs").

## II.    BACKGROUND

### a.    The Illegitimate Nicolás Maduro Regime Versus The Democratically Elected 2015 National Assembly

> i.    *In opposition to Nicolás Maduro's authoritarian government, the Venezuelan people elect the 2015 National Assembly, which declares Maduro's presidency illegitimate.*

Since taking power as Venezuela's President in 2013, Nicolás Maduro's regime has been widely characterized as authoritarian and anti-democratic, and he has been accused of political repression and human rights violations.[2]  Under his rule, Venezuela has undergone one of the most severe economic depressions and migration crises of the 21st century.[3]  Further, and as relevant to this litigation, under the Maduro regime, Venezuela and Venezuela's state-owned oil company, PDVSA, have accrued substantial debt to foreign investors.

In December 2015, in "[t]he last democratic election in Venezuela," the Venezuelan people "overwhelming rejected Maduro and voted for opposition control" of Venezuela's legislature, the

---

[2] *See* Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://www.state.gov/venezuelas-interim-government-and-the-2015-national-assembly/ [hereinafter Venezuela's Interim Government].

[3] *See* Betilde Muñoz-Pogossian & Alexandra Winkler, *The Persistence of the Venezuelan Migrant and Refugee Crisis*, Ctr. for Strategic & Int'l Stud. (Nov. 27, 2023), https://www.csis.org/analysis/persistence-venezuelan-migrant-and-refugee-crisis ("The outflow of refugees and migrants from Venezuela is the largest displacement crisis in the world, with almost 7.7 million migrants and refugees as of August 2023."); *see also U.S. Government Support for the Democratic Aspirations of the Venezuelan People*, U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/u-s-government-support-for-the-democratic-aspirations-of-the-venezuelan-people/index.html (last visited July 30, 2024) [hereinafter *Democratic Aspirations*].

National Assembly (the "2015 National Assembly").[4]  The United States recognizes the 2015 National Assembly "as the last remaining democratic institution in Venezuela."[5]

However, Maduro refused to accept the 2015 parliamentary election results and—in an effort to usurp the 2015 National Assembly's legislative power—created a parallel National Constituent Assembly in 2017.[6]  Much of the international community denounced the National Constituent Assembly as unconstitutional,[7] and the United States considered it to be "the illegitimate product of a flawed process designed by the Maduro dictatorship to further its assault on democracy."[8]

In 2018, Maduro was re-elected for a second six-year term as President of Venezuela.[9]  The 2018 presidential election, however, was globally condemned as fraudulent.[10]  In particular, the

---

[4] Bradley A. Freden, Deputy Permanent Representative of the U.S., U.S. Mission to the Org. of Am. States, Remarks at the Special Permanent Council Meeting:  OAS Resolution Condemns the Fraudulent Elections in Venezuela (Dec. 9, 2020), https://usoas.usmission.gov/oas-resolution-condemns-the-fraudulent-elections-in-venezuela.  The 2015 National Assembly, also known as the IV Venezuelan National Assembly, was seated on January 5, 2016.  *See* Statement, Andrea M. Gacki, Director, Off. of Foreign Assets Control, General License No. 31B:  Certain Transactions Involving the IV Venezuelan National Assembly and Certain Other Persons (Jan. 9, 2023), https://ofac.treasury.gov/media/930241/download?inline [hereinafter General License No. 31B].

[5] Venezuela's Interim Government, *supra* note 2.

[6] *See What Has Venezuela's Constituent Assembly Achieved?*, BBC NEWS (Aug. 30, 2017), https://www.bbc.com/news/world-latin-america-41094889.

[7] *See id.*

[8] Press Release, Heather Nauert, Dep't Spokesperson, U.S. Embassy & Consulate in Ecuador, Venezuela's Illegitimate National Constituent Assembly (Aug. 3, 2017), https://ec.usembassy.gov/venezuelas-illegitimate-national-constituent-assembly/.

[9] William Neuman & Nicholas Casey, Venezuela Election Won by Maduro Amid Widespread Disillusionment, N.Y. Times (May 20, 2018), https://www.nytimes.com/2018/05/20/world/americas/venezuela-election.html.

[10] *See id.*; *see also Venezuela:  A Democratic Crisis*, U.S. Dep't of State: Bureau of W. Hemisphere Affs., https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/#crisis (last visited July 30, 2024) [hereinafter *Democratic Crisis*]; U.S. Dep't of State, Bureau of Democracy, H.R. and Lab., Venezuela Human Rights Practices Report (2023) § 3, available at https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/venezuela/; National Assembly of Venezuela, *Acuerdo Reiterando el Desconocimiento de la Farsa Realizada el 20 de Mayo de 2018 para la Supuesta Elección del Presidente de la República* [Agreement

United States decried the Maduro regime's "intimidation and disenfranchisement of voters . . . improper tabulation of the results . . . [and] outright bans on the participation of Venezuela's most popular political parties and candidates."[11]

Consequently, the 2015 National Assembly invoked the Republic's Constitution to declare Maduro's presidency illegitimate[12] and appointed Juan Guaidó as the Interim President of Venezuela.[13]  The United States, the United Kingdom, and the European Union promptly recognized Guaidó as Venezuela's legitimate Interim President and called on Maduro to "step aside in favor of a legitimate leader reflecting the will of the Venezuelan people."[14]  The 2015 National Assembly subsequently adopted the Statute to Govern a Transition to Democracy to Reestablish the Validity of the Constitution of the Republic of Venezuela (the "Transition Statute") to "facilitate a democratic transition in Venezuela."  *See Jiménez v. Palacios*, 250 A.3d 814, 825 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (internal quotation marks and citation omitted).  Since 2019, the United States has fully endorsed the 2015 National

---

Reiterating the Refusal to Acknowledge the Farce Realized on May 20, 2018 for the Alleged Election of the President of the Republic], (May 22, 2018) https://www.asambleanacionalvenezuela.org/actos/detalle/acuerdo-reiterando-el-desconocimiento-de-la-farsa-realizada-el-20-de-mayo-de-2018-para-la-supuesta-eleccion-del-presidente-de-la-republica-275 [hereinafter *Acuerdo*].

[11] *Democratic Crisis*, *supra* note 10; *see also Acuerdo*, *supra* note 10.

[12] *Acuerdo*, *supra* note 10; *see also* Press Release, Off. of the Press Sec'y, U.S. Embassy & Consulate in Ecuador, Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaido as the Interim President of Venezuela (Jan. 23, 2019), https://ec.usembassy.gov/statement-from-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-as-the-interim-president-of-venezuela/.

[13] Press Release, Michael R. Pompeo, Sec'y of State, Recognition of Juan Guaido as Venezuela's Interim President (Jan. 23, 2019), https://2017-2021.state.gov/recognition-of-juan-guaido-as-venezuelas-interim-president/#:~:text=Washington%2C%20DC-,January%2023%2C%202019,in%20restoring%20democracy%20to%20Venezuela.

[14] *Id.*; *see also* Eliza Mackintosh, *European Nations Recognize Juan Guaido as Venezuela's Interim President*, CNN (Feb. 4, 2019), https://www.cnn.com/2019/02/04/americas/europe-guaido-venezuela-president-intl/index.html.

Assembly and has supported efforts to seek a "peaceful and democratic path"[15] and restore democracy in Venezuela.[16]

> ii.    *Interim President Juan Guaidó appoints an ad hoc board to manage Venezuela's state-owned oil company, PDVSA.*

In 2019, pursuant to the Transition Statute, Interim President Guaidó appointed an "*ad hoc* Managing Board" to govern PDVSA (the "*Ad Hoc* Board").  *See Jimenez*, 250 A.3d at 825 (citation omitted).  PDVSA has been wholly owned by Venezuela since its formation in 1975.  *See id.* at 822 ("Venezuela is the sole stockholder of PDVSA.").

Guaidó's appointment of the *Ad Hoc* Board is valid under U.S. law.  *Id.* at 831 – 41.  The *Ad Hoc* Board manages PDVSA's assets from the United States and runs parallel to the Maduro-appointed board of PDVSA (the "Maduro Board"), which the United States does not recognize.[17]

> iii.    *Since August 2023, the National Assembly and the Ad Hoc Board have been working to restructure debt held by Venezuela and PDVSA.*

In November 2018, then-President Donald Trump issued Executive Order 13850, which prohibited certain transactions with the Maduro regime.[18]  Several months later, Executive Order 13850 was extended to PDVSA, and the U.S. Government "froze all property and interests in property of [PDVSA] . . . and prohibited U.S. persons (companies or individuals) from engaging

---

[15] Press Release, Off. of the Spokesperson, U.S. Dep't of State, *The United States Takes Action Against Corrupt Maduro Regime Officials* (June 27, 2019), https://uy.usembassy.gov/the-united-states-takes-action-against-corrupt-maduro-regime-officials/.

[16] Press Release, Ned Price, Dep't Spokesperson, U.S. Dep't of State, U.S. Recognition of Venezuela's 2015 National Assembly and Interim President Guaidó (Jan. 4, 2022), https://www.state.gov/u-s-recognition-of-venezuelas-2015-national-assembly-and-interim-president-guaido/; *see also Democratic Aspirations*, *supra* note 2.

[17] *The Reality of PDVSA Ad Hoc*, PDVSA AD HOC, https://pdvsa-adhoc.com/en/the-reality-of-pdvsa-ad-hoc/ (last visited July 30, 2024); *see also Corporate Governance*, PDVSA, http://www.pdvsa.com/index.php?option=com_content&view=article&id=6558&Itemid=891&lang=en (last visited July 30, 2024).

[18] *See* CLARE RIBANDO SEELKE, CONG. RSCH. SERV., IF10715, VENEZUELA: OVERVIEW OF U.S. SANCTIONS POLICY (2024), available at https://crsreports.congress.gov/product/pdf/IF/IF10715.

in transactions with [PDVSA]" without a license issued by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC").[19]

Since then, to mitigate disruptions to the market arising from these sanctions, OFAC has issued licenses that create exceptions to the sanctions and allow certain transactions.[20]  In January 2023, OFAC issued General License No. 31B, which authorized U.S. persons to engage in transactions with the 2015 National Assembly, while reiterating the U.S. Government's prohibition against transactions with the Maduro regime.[21]  Shortly thereafter, OFAC authorized the 2015 National Assembly and the *Ad Hoc* Board of PDVSA to negotiate settlement agreements in relation to any debt held by Venezuela or PDVSA.[22]

As the statutes of limitations on potential claims by creditors of Venezuela and PDVSA began to run, the 2015 National Assembly and the *Ad Hoc* Board faced the prospect of expending significant resources on legal defense costs.  The unfortunate likely outcome of such litigation would be not only to draw down the country's already strained resources but also to hamper the potential orderly restructuring of the country's debt and impede future access to international financing, thereby diminishing the recovery of the very bondholders who were compelled to sue in order to prevent extinction of their claims.

Accordingly, on August 8, 2023, the 2015 National Assembly passed a resolution to extend the statute of limitations applicable to bonds issued by Venezuela and related enforcement actions until December 31, 2028.  *See* Affirmation of Dora Georgescu, Ex. A, at 2 – 3.  The next day, the *Ad Hoc* Board announced a similar resolution, unilaterally extending any statute of limitations on

---

[19] *Id.*
[20] *See id.*
[21] General License No. 31B, *supra* note 4.
[22] *Id.*

claims relating to notes issued by PDVSA until 2028.  *Id.* at 4.  Since October 2023, the *Ad Hoc*

Board has worked with over 23 different creditor institutions to file joint stipulations to terminate

current proceedings without prejudice to reinstating the creditors' claims on or before December

31, 2028.[23]

### b. <u>Factual and Procedural History of This Action</u>

#### i. *Plaintiffs purchase promissory note issued by PDVSA and initiate action against PDVSA for breach of contract.*

By agreement dated May 4, 2017, PDVSA issued fourteen promissory notes (the "Note

Agreement" and related "Notes") to Schlumberger Venezuela, S.A. ("SVSA"), which was

guaranteed by Defendant PDVSA Petróleo S.A. ("Petróleo" and together with PDVSA,

"Defendants").  Complaint, Dkt. No. 1, ("Compl.") ¶ 23.  SHVSA assigned the Notes to a corporate

affiliate, Schlumberger Finance B.V. ("SFBV") on July 20, 2017.  *Id.* at ¶ 24.  On October 29,

2018, SFBV assigned the Notes to Cowen and Company, LLC ("Cowen").  *Id.* at ¶ 27.  That same

day, Cowen assigned the Notes to Plaintiffs[24] pursuant to an Assignments and Acceptances.  *Id.* at

¶ 30.

On December 11, 2023, Plaintiffs initiated this action for breach of contract, alleging that

Defendants had failed to make required principal and interest payments under the Note Agreement.

*See generally* Compl.  Plaintiffs sought damages against Defendants, jointly and severally, in the

amount of $1,125,886,106.21, including default interest at 8.5% per annum, plus pre- and post-

---

[23]*Venezuela Creditor Committee Files Summons With Notice and Stipulation of Dismissal*, Cleary Gottlieb (Oct. 11, 2023), https://www.clearygottlieb.com/news-and-insights/news-listing/venezuela-creditor-committee-files-summons-with-notice-and-stipulation-of-dismissal.

[24] "Cowen assigned Notes R-1 and R-2 to G&A Strategic Investments I LLC; Notes R-3 and R-4 to G&A Strategic Investments II LLC; Notes R-5 and R-6 to G&A Strategic Investments III LLC; Notes R-7 and R-8 to G&A Strategic Investments IV LLC; Notes R-9 and R-10 to G&A Strategic Investments V LLC; Notes R-11 and R-12 to G&A Strategic Investment VI LLC; Notes R-13 and R-14 to G&A Strategic Investments VI LLC."  *Id.*

judgment interest at the rate of 8.5% per annum, fees and costs. *See id.* at ¶¶ 54, 64. Subsequently, Plaintiffs filed an Affidavit of Service, indicating that the Complaint and related filings had been served on Corporation Service Company ("CSC") on December 20, 2023. *See* Affidavit of Service, Dkt. No. 21 ("Service Aff."). As a result, the deadline for PDVSA to answer or otherwise respond to the Complaint was set for February 20, 2024. *See id.*

On December 27, 2023, CSC informed Plaintiffs that it was no longer engaged as PDVSA's service agent and, therefore, was not accepting service on PDVSA's behalf. *See* Declaration of Michael J. Baratz in Support of Plaintiffs' Motion for Default Judgment, Dkt. No. 34, ("Baratz Decl."), Ex. A. At no point did CSC forward the Complaint to PDVSA or otherwise notify PDVSA of this action. *See* Declaration of Horacio Francisco Medina Herrera ("Medina Decl.") ¶¶ 4 – 7.[25] Nonetheless, Plaintiffs did not inform the Court that service had not been effectuated and did not pursue alternate methods of service. Instead, Plaintiffs proceeded with this action, knowing that PDVSA had not been served.

>    ii.    *Plaintiffs move for default judgment against PDVSA.*

On February 5, 2024—over two weeks before PDVSA's purported deadline to respond to the Complaint[26]—the Court directed Plaintiffs to move for default judgment. *See* February 5, 2024 Minute Entry for Proceedings Held Before Judge Jed. S. Rakoff ("Feb. 5 Min."); Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, Dkt. No. 33 ("Pl.s' Mem."), at 6. Just three days after PDVSA's purported response deadline, the Clerk of Court entered a certificate of default, and Plaintiffs moved for default judgment. *See* Dkt. Nos. 31 – 38.

---

[25] As set forth in the Declaration of Horacio Francisco Medina Herrera, the *Ad Hoc* Board does not have access to the documents and records of the Maduro Board. Accordingly, PDVSA does not know the circumstances under which CSC stopped accepting service on PDVSA's behalf.
[26] As set forth further below, service on CSC was not effective and, therefore, did not trigger a deadline for PDVSA to respond to the Complaint.

In support of their motion for default judgment, Plaintiffs submitted CSC's letter, dated December 27, 2023, wherein CSC notified Plaintiffs that it would not accept service on PDVSA's behalf. *See* Baratz Decl., Ex. A. Acknowledging that due to CSC's refusal to accept service on behalf of PDVSA, the Court could "determine that the manner of serving process was ineffective," Plaintiffs requested alternative relief for an order directing service of process on PDVSA pursuant to 28 U.S.C. § 1608(b)(3). Baratz Decl. ¶ 18; *see also* Pl.'s Mem. at 22 – 25.

On March 8, 2024, the Court entered default judgment. *See* Default Judgment, Dkt. No. 40 ("Default J."). In so doing, the Court did not address CSC's rejection of service or Plaintiffs' tacit admission that PDVSA had not been served. *See id.*

Subsequently, Plaintiffs moved for leave to serve the default judgment and moving papers by alternative means. *See* Dkt. No. 43. Plaintiffs filed this motion because CSC had rejected service of the default judgment, just as it had previously rejected service of the Complaint. *See generally* Memorandum of Law in Support of Plaintiffs' Motion for Leave to Serve Default Judgment by Alternative Means, Dkt. No. 43-1 ("Pl.s' Service Mem."). Accordingly, to ensure that PDVSA received the default judgment, Plaintiffs sought leave to serve the default judgment pursuant to 28 U.S.C. § 1608(b)(3). *See id.* at 4. That motion remains pending.

On July 25, 2024, the Court held oral arguments on PDVSA's proposed motion to vacate the March 8, 2024 default judgment and granted PDVSA leave to move to vacate. *See* Minute Entry for Proceedings Held Before Judge Jed S. Rakoff, July 25, 2024. This motion follows.

III.    **LEGAL STANDARD**

F.R.C.P. 55(c) empowers courts to set aside default judgments pursuant to F.R.C.P. 60(b). A court may set aside a default judgment under F.R.C.P. 60(b)(4) where the judgment is void and under F.R.C.P. 60(b)(6) for "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(4), (6).

Default judgment is an "'extreme sanction . . . of last, rather than first resort.'" *Weingeist v. Tropix Media & Ent.*, 2022 WL 970589, at *12 (S.D.N.Y. Mar. 30, 2022) (quoting *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir. 1981)). Indeed, the Second Circuit disfavors default judgments and, thus, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Default judgments are especially disfavored when "substantial sums of money are demanded." *Id.* at 97; *see also Jeremiah v. 5 Towns Jewish Times, Inc.*, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023) ("The more money involved, the less justification for entering the default judgment.").

## IV.    ARGUMENT

### a.    The Expedited Default Proceeding Deprived PDVSA of a Reasonable Chance to be Heard

F.R.C.P. 55(b) provides that a court "may" enter a default judgment in certain circumstances, not that it must. *Jeremiah*, 2023 WL 6593997, at *2. In other words, "a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default." *Id.* District courts must therefore "supervise default judgments with extreme care to avoid miscarriages of justice." *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993). Recognizing "the pressure on district courts to 'dispose of cases that delay . . . and clog their calendars,'" the Second Circuit has instructed district courts to "'maintain a balance between clearing their calendars and affording litigants a reasonable chance to be heard.'" *Tiger Sugar Franchise USA Inc. v. Win Luck Trading Inc.*, 2024 WL 1513599, at *4 (E.D.N.Y. Mar. 19, 2024), *report and recommendation adopted*, 2024 WL 1513680 (E.D.N.Y. Apr. 8, 2024) (quoting *Enron Oil Corp*, 10 F.3d at 95 – 96 ) (internal brackets omitted).

10

Here, the balance tipped heavily in favor of the Court's calendar at the expense of PDVSA's right to be heard. If Plaintiffs had properly served PDVSA on December 20, 2023—which, as discussed further below, they did not—PDVSA's deadline to respond to the Complaint would have been February 20, 2024. *See* Dkt. No. 21; *see also* 28 U.S.C. § 1608(d) (providing that foreign instrumentalities shall answer or otherwise respond to a pleading within 60 days of service). Yet before the 60 days had even lapsed, the Court proceeded as if default were a foregone conclusion. Over two weeks before PDVSA's purported deadline to respond to the Complaint, the Court directed Plaintiffs to move for default judgment. *See* Feb. 5 Min.; Pl.s' Mem. at 6. And just two-and-a-half weeks after PDVSA's alleged response deadline, the Court entered default judgment against Defendants for $1,535,840,422.22 plus pre- and post-judgment interest and attorneys' fees. *See* Default J.

In so doing, the "zeal for a tidy, reduced calendar" overcame the "duty to do justice" in this case. *Enron Oil Corp.*, 10 F.3d at 96. Indeed, PDVSA's purported two-and-a-half week delay in responding to the Complaint is too short to warrant default judgment. *See Meehan*, 652 F.2d at 277 (holding that 10-day delay in submitting an answer was insufficient to justify default judgment). This is especially true considering that the expedited default proceeding resulted in a judgment *for over $1,500,000,000.00*. *See Enron Oil Corp.*, 10 F.3d at 96 (noting that default judgments for "substantial sums" of damages are particularly disfavored).

### b.   The Default Judgment is Void Under F.R.C.P. 60(b)(4) Because The Court Lacks Personal Jurisdiction Over PDVSA

        *i.    Default judgment based on jurisdictional error is void as a matter of law.*

A default judgment is void under F.R.C.P. 60(b)(4) where it is premised on a jurisdictional error or a due process violation "'that deprives a party of notice or the opportunity to be heard.'" *Attar v. Glass*, 2022 WL 17095248, at *2 (S.D.N.Y. Nov. 21, 2022) (quoting *United Student Aid*

*Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)).  Accordingly, "[a] judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law."  *Id.* (internal quotation marks and citations omitted); *see also Loc. 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Constr., Inc.*, 2003 WL 22052872, at *3 (S.D.N.Y. Sept. 2, 2003) ("The procedural requirement of effective service of process must be satisfied before a Court can assert personal jurisdiction over a defendant.").

Under F.R.C.P. 60(b)(4), relief "is not discretionary and a meritorious defense is not necessary." *Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019)  (internal quotation marks and citation omitted).  If the underlying judgment is void, "it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)."  *Id.* (internal quotation marks and citation omitted).

> ii.    *Because PDVSA is a foreign instrumentality, the Court's jurisdiction over PDVSA is determined by the FSIA.*

As courts in this district have recognized, PDVSA—which is a separate limited company (sociedad anónima) wholly owned by Venezuela—is a foreign instrumentality.[27]  *Dresser-Rand Co. v. Petroleos de Venezuela, S.A.*, 2019 WL 3242585, at *1 n. 1 (S.D.N.Y. July 3, 2019) ("PDVSA is a wholly-owned instrumentality of Venezuela"); *Skanga Energy & Marine Ltd. v. Arevenca*, S.A., 2014 WL 3928704, at *8 (S.D.N.Y. Aug. 12, 2014) ("PDVSA is a government instrumentality.").   An entity qualifies as a foreign instrumentality under the FSIA if it is a "separate legal person" that is neither a citizen of the United States "nor created under the laws of any third country" and meets either of the following conditions: (1) it is "an organ of a foreign

---

[27] Plaintiffs have acknowledged that PDVSA is a foreign instrumentality.  *See, e.g.*, Compl. ¶ 7.

state"; or (2) "a ***majority of [its] shares*** or other ownership interest ***is owned by a foreign state***." 28 U.S.C. § 1603(b) (emphasis added).

Foreign instrumentalities often engage in commercial activities that are similar to those of corporations. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 152 (D.C. Cir. 1994) ("As a general matter, entities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name.") (internal quotation marks and citation omitted). Nonetheless, an entity is a foreign instrumentality, ***not*** merely a foreign corporation, if it is directly majority-owned by a foreign sovereign. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). An entity that is separated from the sovereign "by one or more intermediate corporate tiers," by contrast, is not an instrumentality. *Id.* at 474 – 75 (finding that indirect subsidiaries of Israel were not instrumentalities of Israel).

The FSIA grants foreign instrumentalities sovereign immunity. *See Bartlett v. Baasiri*, 81 F.4th 28, 32 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1456 (2024). Sovereign immunity is meant to afford instrumentalities, "some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns." *Id.* at 33 (internal quotation marks and citation omitted). To that end, the FSIA provides the "sole basis for obtaining jurisdiction" over a foreign instrumentality in the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see also Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 83 (2d Cir. 2013) ("The only source of subject matter jurisdiction over a foreign sovereign or its

instrumentalities in the courts of the United States is the FSIA[.]") (citation omitted).[28]  District courts shall have personal jurisdiction over foreign states and their instrumentalities where: (1) there is subject matter jurisdiction; and (2) the defendant is served in accordance with the FSIA. *See* 28 U.S.C. § 1330(a)–(b); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) ("Under the FSIA, federal courts are empowered to exercise personal jurisdiction over a foreign sovereign when two conditions obtain: (1) an exception from jurisdictional immunity established by the FSIA applies, and (2) ***the sovereign has been served with process in accordance with the FSIA's provisions***.") (emphasis added).

Section 1608(b) of the FSIA governs service of process upon foreign instrumentalities and prescribes three methods of service.  *Chettri v. Nepal Bangladesh Bank, Ltd.*, 2014 WL 4354668, at *8 (S.D.N.Y. Sept. 2, 2014), *aff'd sub nom. Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016) (quoting 28 U.S.C. § 1608(b)).  The first method of service is "in accordance with any special arrangement for service" between the plaintiff and the instrumentality.  28 U.S.C. § 1608(b)(1).  If no such special arrangement exists, service may be effectuated through an authorized agent in the United States or "in accordance with an applicable international convention on service of judicial documents."  *Id.* at § 1608(b)(2).  If this second method is unavailable, the final method permits service through a letter rogatory, through the clerk of the court, or as directed by the court, provided that such service is "reasonably calculated to give actual notice."  *Id.* at § 1608(b)(3).  These three methods provide "the exclusive means of service in an FSIA case."  *Doe v. Fed. Republic of Germany*, 2023 WL 6785813, at *5 (S.D.N.Y. Oct. 13, 2023).

Service on a foreign instrumentality is upheld only where the serving party has "substantially complied with the requirements of the FSIA."  *Chettri*, 2014 WL 4354668, at *9

---

[28] Plaintiffs do not dispute the applicability of the FSIA.  *See generally* Pl.s' Mem.

(internal quotation marks and citation omitted); *see also In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at \*7 (S.D.N.Y. Apr. 5, 2022) ("'[S]ubstantial compliance' is the touchstone for effective service under § 1608(b).") (internal quotation marks and citation omitted).  The primary factor that courts consider under the substantial compliance test is "whether the defendant receive[d] actual notice and was not prejudiced by the lack of compliance with [the] FSIA." *Chettri*, 2014 WL 4354668, at \*9   (internal quotation marks and citation omitted; second bracket added).

### iii.    Plaintiffs failed to serve PDVSA in accordance with the FSIA.

Here, Plaintiffs attempted to serve PDVSA in accordance with a "special arrangement," which is the first method of service enumerated in § 1608(b), by serving CSC.  *See* Service Aff. Pursuant to the Note Agreement, CSC—a Delaware corporation that, among other things, operates as a registered agent for service of process[29]—was appointed as PDVSA's irrevocable agent to accept service of process for any action brought in connection with the Notes.  *See* Compl., Ex. 1 at § 9.15(d).

As a threshold matter, the president of the *Ad Hoc* Board of PDVSA has declared under penalty of perjury that CSC never forwarded the Complaint or otherwise notified PDVSA of this action.  *See* Medina Decl. ¶ 7.  This denial of service "rebuts the presumption of proper service." *Weingeist*, 2022 WL 970589, at \*10.

Further, CSC did not have authority to accept service on behalf of PDVSA and rejected service just one week after Plaintiffs had attempted service.  *See* Baratz Decl., Ex. A.  Plaintiffs' attempted service upon an entity that was not authorized to accept service fails to establish that

---

[29]*See    Service    of    Process*, CORPORATION    SERVICE    COMPANY, https://www.cscglobal.com/service/entity-solutions/registered-agent-services/service-of-process/ (last visited Aug. 1, 2024). /.

PDVSA received actual notice of this action. *See Chettri*, 2014 WL 4354668, at *11 (holding that plaintiff failed to prove that service on individuals without authority to accept service established actual knowledge or notice); *Sakhrani v. Takhi*, 1997 WL 33477654, at *6 (S.D.N.Y. Sept. 10, 1997) (holding that service upon three different individuals without authority to accept service failed to establish defendant's actual notice of the lawsuit).

Tellingly, in moving for default judgment, Plaintiffs did not even attempt to argue that service upon CSC gave PDVSA actual notice of this action, thereby satisfying Plaintiffs' obligation to substantially comply with the FSIA. *See generally* Pl.s' Mem. Rather, Plaintiffs asserted that because PDVSA had irrevocably designated CSC as its service agent, it had waived its right to other methods of service. *Id.* at 13. In support of this argument, Plaintiffs relied on inapposite cases that did not involve foreign states or instrumentalities and, thus, did not implicate the FSIA. *Id.* at 13 – 15 (citing *Mastec Latin Am. v. Inepar S/A Industrias E Construcoes*, 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004) (Brazilian corporation), *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at *1 (S.D.N.Y. May 11, 2005) (Indonesian subsidiaries), and *Recyclers Consulting Group, Inc. v. IBM-Japan, Ltd.,* 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997) (Japanese corporation)). The holdings in these cases regarding service upon a ***foreign corporate defendant's*** irrevocable agent, therefore, have no bearing on Plaintiffs' obligation to substantially comply with the FSIA to serve a ***foreign instrumentality***.

The unique circumstances of the *Ad Hoc* Board's governance of PDVSA further distinguish PDVSA from a foreign corporate defendant that designated an irrevocable agent to accept service of process. As set forth above, the *Ad Hoc* Board of PDVSA was established in 2019, *see supra* II.a.ii, two years after the Maduro Board had entered into the Note Agreement that designated CSC as PDVSA's irrevocable service agent. *See supra* II.b.i. The *Ad Hoc* Board does

not have access to the documents and records of the Maduro Board, including any information regarding when or why CSC stopped accepting service on PDVSA's behalf. *See* Medina Decl. ¶¶ 4 – 7.  However, the U.S. Government sanctions issued in 2019, which prohibited U.S. companies such as CSC from engaging in transactions with PDVSA, may have contributed to CSC's resignation as PDVSA's service agent.  *See supra* II.a.iii.[30]  Failure to account for these circumstances, which are unique to PDVSA, is at odds with the comity afforded to foreign instrumentalities through the FISA.

Upon learning from CSC that PDVSA would not be served, Plaintiffs could, and should, have pursued one of the other methods enumerated in the FSIA, namely under § 1608(b)(3).  As courts in this district have recognized, "[t]he service requirements of § 1608(b)(3) are not onerous," which renders a failure to effect service properly "particularly glaring."  *Pinnacle Madison Ave. Corp. v. Italian Trade Agency*, 2022 WL 20472090, at *8 (S.D.N.Y. Sept. 30, 2022); *see also Concord Reinsurance Co. v. Caja Nacional De Ahorro Y Seguro*, 1994 WL 86401, at *3 (S.D.N.Y. Mar. 16, 1994) (noting the "ease with which plaintiff could have complied with the specific terms of § 1608(b)(3)," and dismissing for lack of personal jurisdiction based on failure to comply with § 1608(b)(3)).

Revealing, Plaintiffs' filings to date in this action repeatedly acknowledge that service of CSC was insufficient to comply with the FISA.  In moving for default judgment, and then in moving to serve such judgment by "alternative means," Plaintiffs consistently asked the Court for an order directing service of process on PDVSA pursuant to 28 U.S.C. § 1608(b)(3) in the event that Plaintiffs' legally inadequate argument regarding service failed.  *See* Pl.s' Mem. at 22 – 25; *see generally* Pl.s' Service Mem.  Accordingly, Plaintiffs were conscious that they had failed to

---

[30] *See* also SEELKE, *supra* note 18. .

serve PDVSA in accordance with the FSIA and tacitly conceded as much each time they asked the Court to permit alternative service.

Critically, because Plaintiffs failed to address their obligation to substantially comply with the FSIA in their motion for default judgment, the Court did not have the opportunity to consider whether Plaintiffs had satisfied their obligation. Rather, the Court entered default judgment without addressing Plaintiffs' failure to provide PDVSA with actual notice of this action. *See* Default J.[31]

> iv.     *Due to Plaintiffs' failure to comply with the FSIA's service mandates, the Court lacks personal jurisdiction over PDVSA.*

Because Plaintiffs have not served PDVSA with adequate process, Plaintiffs have failed to establish the Court's jurisdiction over PDVSA. *See Mobil Cerro Negro*, 863 F.3d at 96 (reversing default judgment against Venezuela because plaintiffs had not served Venezuela in accordance with the FSIA and, thus, the district court did not have personal jurisdiction). Because PDVSA has not been served pursuant to the FSIA, the default judgment is void. *See Loc. 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO*, 2003 WL 22052872, at *5 (holding that defective service rendered default judgment "void and unenforceable" and vacating default judgment under F.R.C.P. 60(b)(4)).

---

[31] Four days prior to entering default judgment in this action, the Court entered default judgment in another action where CSC had rejected service on PDVSA's behalf. *See Pharo Gaia Fund, Ltd. v. Petróleos de Venezuela, S.A.*, 2024 WL 917608, at *1 (S.D.N.Y. Mar. 4, 2024). There, the Court found that because PDVSA had irrevocably appointed CSC as its designated agent, by serving CSC, plaintiffs had "complied with the contractual arrangements and Section 1608(b)(1)." *Id.* at *2. Just like in this action, however, the Court did not address the plaintiffs' obligation to substantially comply with the FSIA's service requirements and, thus, did not make any determination as to whether PDVSA had received actual notice of the lawsuit. *See id.*

c.    **In the Alternative, the Default Judgment Should be Vacated Under F.R.C.P. 60(b)(6)**

If the Court finds that, notwithstanding the reasons set forth above, the default judgment is not void, it should nonetheless vacate the default judgment under F.R.C.P. 60(b)(6). Courts must vacate default judgment under F.R.C.P. 60(b)(6) if: (1) the defendant did not willfully fail to answer the complaint, (2) the defendant has a meritorious defense to the action, and (3) the plaintiff would not be prejudiced by vacating the judgment. *See Weingeist*, 2022 WL 970589, at *4. Here, consideration of these three factors weighs heavily in favor of vacating the default judgment.

i.    *PDVSA did not willfully default.*

Default is willful where it is due to "egregious or deliberate conduct," rather than "mere negligence." *Id.* at *10 (internal quotation marks and citations omitted). For example, a "defendant's strategic decision to default" is willful. *Cho v. Osaka Zen Spa*, 2023 WL 5003570, at *5 (S.D.N.Y. Aug. 4, 2023) (citation omitted). Default is similarly willful where the defendant receives multiple notices related to litigation but ignores them. *See United States v. Manhattan Cent. Cap. Corp.*, 2001 WL 902573, at *6 (S.D.N.Y. July 26, 2001) (finding willfulness where defendant ignored multiple certified letters related to the litigation because his "lawyer friend told him not to worry and to refuse the letters") (internal quotation marks omitted).

PDVSA has not demonstrated the "deliberately evasive conduct . . . required for a finding of willfulness." *See Weingeist*, 2022 WL 970589, at *10. As set forth above, PDVSA defaulted because it did not have actual notice of this action. *See supra* IV.b.iii. "[A] showing that default was inadvertent is sufficient" to vacate a default judgment. *Glob. Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013), *aff'd in part, modified in part sub nom.* 612 Fed. App'x 11 (2d Cir. 2015). Upon learning of this action and the default judgment through its own

19

diligence,[32] PDVSA promptly retained counsel and moved to vacate the default judgment, further demonstrating that it did not willfully default. *See Johnson v. New York Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018), *aff'd*, 800 Fed. App'x 18 (2d Cir. 2020) ("[T]he Second Circuit has found that a defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful.").

Additionally, willfully defaulting in the proceedings here would be wholly inconsistent with PDVSA's demonstrated history of engaging with its creditors to defend PDVSA's interests and seek mutually beneficial resolutions where possible. As set forth above, for nearly a year, the *Ad Hoc* Board has devoted considerable resources to reducing bondholder litigation as part of its greater efforts to restructure PDVSA's debt. *See supra* II.a.iii. There is nothing to indicate that PDVSA would willfully default in this action rather than protect its interests as it has in the face of litigation with other creditors.

ii.    *PDVSA intends to assert meritorious defenses.*

To be meritorious, a defense "need not be ultimately persuasive." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, the defense must simply raise an issue that gives "the factfinder some determination to make." *Id.* (citation omitted); *see also Johnson*, 324 F.R.D. at 71 ("On the question of meritorious defense, '[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'") (citing *Enron Oil Corp.*, 10 F.3d at 98). A defaulting defendant has a "low threshold to satisfy this factor." *See Johnson*, 324 F.R.D. at 72 (internal quotation marks and citation omitted).

---

[32] To date, Plaintiffs have not served PDVSA with the default judgment. *See generally* Pl.s' Service Mem. (explaining that CSC rejected service of the default judgment).

In addition to the lack of personal jurisdiction defense set forth above, *see supra* IV.b, PDVSA intends to assert two additional defenses: (1) Plaintiffs lack standing because their purchase of the Notes was champertous; and (2) Plaintiffs' claims with respect to two allegedly missed payments are time-bared under New York's six-year statute of limitations.

           1.      <u>Plaintiffs lack standing because their purchase of the Notes violates New York's champerty statute</u>.

New York's champerty statute—Judiciary Law § 489—"restricts individuals and companies from purchasing or taking an assignment of notes or other securities 'with the intent and for the purpose of bringing an action or proceeding thereon.'" *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016) (quoting N.Y. Jud. Law § 489 (2004)). It is a violation of the champerty statute to purchase notes for the "primary purpose" of bringing suit. *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020), *aff'd sub nom. Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, 2021 WL 4515256 (2d Cir. Oct. 4, 2021), and *aff'd sub nom.* 2021 WL 4515256 (2d Cir. Oct. 4, 2021) (internal quotation marks and citation omitted). When a lawsuit is not "merely an incidental or secondary purpose of an assignment, but its very essence, the assignment is void." *Id.* (internal quotation marks, brackets, and citation omitted). Supreme Court and Second Circuit precedent indicate that an invalid assignment deprives plaintiffs of both Article III and prudential standing. *Id.* at 278.

Here, Plaintiffs purchased the Notes after PDVSA had already defaulted on the payments owed under the governing Note Agreement, which raises an inference that the primary purpose of the purchase was to bring this action for breach of the Note Agreement. *See M.V.B. Collision Inc. v. Allstate Ins. Co.*, No. 22783/08, at *1 (Nassau Dist. Ct. July 16, 2009) (finding that facts set forth by defendant are "sufficient to raise the inference of a champertous intent"). The Note Agreement was originally between PDVSA and SVSA and dated May 4, 2017. Compl. ¶ 23.

SVSA then assigned all the notes to SFBV on July 20, 2017.  *Id.* at ¶ 24.  Plaintiffs allege that PDVSA began defaulting on principal and interest payments under the Note Agreement on August 4, 2017 and continued defaulting through February 4, 2018.  *See id.* at ¶ 51.  After having defaulted for months, PDVSA made a one-time payment on March 9, 2018.  *Id.* at ¶ 50.  After this payment, however, PDVSA allegedly continued to miss more payments in May and August of 2018.  *Id.* at ¶ 51.  ***Knowing that PDVSA had continuously failed to make payments for a year***, Plaintiffs purchased the Note from Cowen through Assignments and Acceptances on October 29, 2018.  *See id.* at ¶ 30.  Thus, it strains credulity that Plaintiffs' primary purpose in purchasing the Notes was anything other than to initiate this action.

Notably, Plaintiffs fail to allege that their purchase of the Notes falls within the safe harbor provision of Judiciary Law § 489.  Under the safe harbor provision, a champertous purchase of a note is nonetheless permissible if the note has an aggregate purchase price of at least $500,000.00.  *See Justinian Capital SPC*, 65 N.E.3d at 1255 – 56 (citing N.Y. Jud. Law § 489 (2)).  Plaintiffs allege that they purchased the Notes from Cowen "for the agreed-to consideration," but do not allege that such consideration was at least $500,000.00.  *See* Compl. ¶ 31.  Further, Plaintiffs fail to offer any evidence of the purchase price; neither the October 29, 2018 Assignments and Acceptances, nor the Declaration of Plaintiffs' Authorized Officer, Juan Ocampo, provide the purchase for the Notes.  *See id.* at Ex. 9; *see also* Declaration of Juan Ocampo in Support of Motion for Default Judgment (Dkt. No. 35), ¶¶ 22 – 34.

As evident from Plaintiffs' filings, Plaintiffs purchased the Notes for the primary purpose of bringing this action against PDVSA for breach of the Note Agreement.  Accordingly, Plaintiffs lack standing to sue.  *See Phoenix Light SF Ltd.*, 612 F. Supp. 3d at 278 (dismissing action for lack of standing where plaintiffs' breach of contract claims were based on champertous assignments) .

2.      Some of Plaintiffs' claims are time-barred.

New York's six-year statute of limitations for contract actions applies to Plaintiffs' claims.
*See Bainbridge Fund Ltd. v. Republic of Argentina*, 37 F.4th 847, 853 – 54 (2d Cir. 2022) (applying
N.Y. C.P.L.R. § 213 to breach of contract claim arising out of Argentina's default on bonds issued
to foreign investor).  With respect to a promissory note payable in installments, "there are separate
causes of action for each installment accrued, and the statute of limitations begins to run on the
date each installment becomes due and is defaulted upon[.]"  *Sce v. Ach*, 56 AD3d 457, 458 (2d
Dep't 2008).

Plaintiffs' allegations against PDVSA arise out of PDVSA's purported failure to make
payments that were due in installments under the Note Agreement.  In relevant part, Plaintiffs
allege that PDVSA first failed to make the requisite payments on August 4, 2017 and then again
on November 4, 2017.  Compl. ¶¶ 40, 47.  These payments were, therefore, due and allegedly
defaulted upon over six years before Plaintiffs initiated this action on December 11, 2023.  *See
generally* Compl.  Accordingly, Plaintiffs may not recover for the value of either of these
payments.  *See Sce*, 56 AD3d at 459 (dismissing claims for nonpayment of installment payments
on promissory notes that had been due over six years prior to commencement of suit).

With respect to both its standing and statute of limitations defenses, PDVSA meets the low
threshold necessary to establish that it has meritorious defenses.  As such, the second factor under
F.R.C.P. 60(b)(6) weighs in favor of vacating default judgment.

iii.      *Vacating default would not prejudice Plaintiffs.*

A plaintiff may demonstrate that it will be prejudiced by vacatur of a default judgment by
showing "that delay will result in the loss of evidence, create increased difficulties of discovery,
or provide greater opportunity for fraud and collusion," or that the "ability to pursue the claim has
been hindered since the entry of the judgment."  *Weingeist*, 2022 WL 970589, at *11 (citation

omitted).  Indeed, "to show the requisite level [of] prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated."  *Murray Eng'g, P.C. v. Windermere Prop. LLC*, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).  In considering prejudice, "the Court must take into account more than mere delay or passage of time."  *Weingeist*, 2022 WL 970589, at *11 – 12 (holding that passage of time did not constitute prejudice and vacating default judgment).

Plaintiffs will suffer no prejudice if the default judgment is vacated.  Vacatur will not result in loss of evidence, create discovery issues, or provide an opportunity for fraud or collusion.  At most, Plaintiffs may claim some delay relative to resolution of this action through a default judgment.  However, not only is delay insufficient to establish prejudice, but any delay here is a self-inflicted wound because, as set forth above, Plaintiffs sought default judgment knowing that service had not been effectuated and, thus, a default judgment would be void for lack of personal jurisdiction.  Because Plaintiffs will not be prejudiced by vacatur of the default judgment, such vacatur is warranted.

## V.    CONCLUSION

For the foregoing reasons, PDVSA respectfully requests that the default judgment be vacated and that the Court grant any and all other relief to which it may be justly entitled.

Dated: August 1, 2024
        New York, New York

Respectfully Submitted,

*/s/ Dora Georgescu*
Dora Georgescu
VINSON & ELKINS LLP
The Grace Building
1114 Avenue of the Americas
32nd Floor
New York, New York 10036
Telephone: (212) 237-0186

dgeorgescu@velaw.com

Andreina Escobar
VINSON & ELKINS LLP
845 Texas Ave, Suite 4700
Houston, Texas 77002
Telephone: (713) 758-2556
aescobar@velaw.com

*Counsel for Defendant Petróleos de Venezuela, S.A.*