**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

G&A STRATEGIC INVESTMENTS I LLC;    :
G&A STRATEGIC INVESTMENTS II LLC;    :
G&A STRATEGIC INVESTMENTS III LLC;    :
G&A STRATEGIC INVESTMENTS IV LLC;    :
G&A STRATEGIC INVESTMENTS V LLC;    :
G&A STRATEGIC INVESTMENTS VI LLC; and    :
G&A STRATEGIC INVESTMENTS VII LLC,    :   Case No. 1:23-cv-10766-JSR
    :
          Plaintiffs,    :
    :   (Consolidated for pretrial purposes with
v.    :   Case No. 1:23-cv-10772-JSR and
    :   Case No. 1:24-cv-4448-JSR)
PETRÓLEOS DE VENEZUELA, S.A.,    :
PDVSA PETRÓLEO S.A., and    :
PDV HOLDING, INC.,    :
    :
          Defendants.    :
    :

**DEFENDANT PDV HOLDING, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................... 3

    I.      G&A Files In Texas, Conceding That This Action "Arises Under State Law," And Then Amends Its Complaint In This Court. .................................... 3

    II.     G&A Participates In *Crystallex,* Where The Parties Have Explained The Prejudice Resulting To Them And To The Sale Process From The Alter Ego Actions Of G&A And Its Affiliates. ........................................................ 6

    III.    In An Effort To Halt This Alter Ego Action, ConocoPhillips Sues G&A, Which Moves To Dismiss Under The First-Filed Rule Because It Has A Case Pending In S.D. Texas. ........................................................................... 8

Legal Standards .......................................................................................................... 9

Argument ...................................................................................................................11

    I.      The Court Must Dismiss The Case Because The Same Alter Ego Issues Involving The Same Parties Are Already Pending Before The S.D. Texas Court. ..................................................................................................11

          A.     The First-Filed Rule Warrants Dismissal. .................................11

          B.     Neither Exception To The First-Filed Rule Applies. ................ 13

    II.     In The Altnerative, The Court Must Dismiss The Amended Complaint Because It Fails To State An Alter Ego Claim. .................................... 15

Conclusion ................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
    860 F. Supp. 128 (S.D.N.Y. 1994) ...................................................................................11, 13

*Adam v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991) ..............................................................................................11, 12

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
    626 F.3d 699 (2d Cir. 2010) ................................................................................................. 10

*Anonymous v. Kaye*,
    104 F.3d 355 (2d Cir. 1996) ................................................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................................10, 11

*Casper Sleep, Inc. v. Mitcham*,
    204 F. Supp. 3d 632 (S.D.N.Y. 2016) ...................................................................................11

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).............................................................................................................. 9

*Columbia Pictures Indus., Inc. v. Schneider*,
    435 F. Supp. 742 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978)................................ 14

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004) ................................................................................... 10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    Misc. No. 17-151-LPS, 2024 WL 325133 (D. Del. Jan. 29, 2024) .......................................... 6

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000) .............................................................................................. 9, 12

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
    522 F.3d 271 (2d Cir. 2008) .................................................................................... 13, 14, 15

*First City Nat'l Bank and Trust Co. v. Simmons*,
    878 F.2d 76 (2d Cir. 1989)................................................................................................ 10, 12

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)............................................................................................................ 17

*GemShares, LLC v. Kinney*,
    No. 17 CIV. 844 (CM), 2017 WL 2559232, (S.D.N.Y. June 2, 2017)....................................... 4

*Lau v. Wells Fargo & Co.*,
    No. 20-cv-03870 (AJN), 2021 WL 1198964 (S.D.N.Y. Mar. 30, 2021) ........................10, 11, 13

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021) ................................................................................ 17

*Oleg Cassini, Inc. v. Serta, Inc.*,
    No. 11 Civ. 8751(PAE), 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ...................10, 11, 12, 13

*Paskar v. City of New York*,
    3 F. Supp. 3d 129 (S.D.N.Y. 2014) ........................................................................ 4

*Semmes Motors, Inc. v. Ford Motor Co.*,
    429 F.2d 1197 (2d Cir. 1970) ................................................................................ 10

*Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*,
    No. 20 CIV. 1436 (ER), 2021 WL 1145245 (S.D.N.Y. Mar. 23, 2021) ................................... 10

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969) ................................................................................ 15

**Rules**

Fed. R. Civ. P. 12 ................................................................................ 10

Fed. R. Civ. P. 69 ................................................................................ 11

## Introduction

Plaintiffs G&A Strategic Investments I–VII LLC (collectively, "G&A") brought this action against Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") to recover on promissory notes and obtain a now-vacated default judgment. Separately, G&A then elected to file a different action in Texas state court against PDV Holding, Inc. ("PDVH"), PDVSA's wholly owned domestic subsidiary, seeking to hold PDVH liable for the judgment on an alter ego theory. Apparently unhappy with its chosen forum, G&A has now filed an Amended Complaint ("AC") in this Court with new claims against PDVH that duplicate the claims in Texas. The new claims, Counts III and IV, are premised on a reverse veil-piercing theory that is exceptionally rare under Delaware law, and they should be dismissed for two alternative reasons.

*First*, dismissal is warranted under the first-filed rule because the counts duplicate identical claims that G&A has already filed against PDVH in Texas state court, subsequently removed to the Southern District of Texas. *G&A Strategic Invs. I LLC, et al. v. PDV Holding, Inc.*, No. 4:24-cv-2774 (S.D. Tex.) ("Texas Action" or "SDTX"). G&A's attempt to add PDVH to this suit is opportunistic forum-shopping that would prejudice PDVH. PDVH's motion to dismiss the Texas Action is fully briefed and the case has been stayed by agreement pending the outcome of G&A's claim against PDVSA and Petróleo here. *Id.*, Dkt. 57. G&A could have filed its alter ego action against PDVH originally in this Court, as G&A's corporate affiliate Girard Street did, but G&A and Girard Street's parent apparently wanted to place bets in different forums. G&A now has buyer's remorse, presumably because it thinks it has a better chance in this Court than in SDTX. Dismissing this claim in favor of the Texas Action would be consistent with G&A's own position in related Delaware proceedings, where just three weeks ago G&A invoked the first-filed rule to dismiss a suit by ConocoPhillips involving the same parties and legal issues. *See ConocoPhillips Petrozuata B.V., et al. v. Girard Street Investment Holdings LLC, et al.*, No. 1:24-cv-01140 (D.

Del.) ("*ConocoPhillips*"), Dkt. 39 at 13 (G&A contending that "the first-filed rule warrants dismissing or staying this suit" because the issues raised by ConocoPhillips "are already before the court[]" in the Texas Action). The prejudice to PDVH from these constantly moving goalposts is evident: apart from now having to file a fourth motion to dismiss when it might have filed only one,[1] PDVH also would be prejudiced in discovery. After consciously declining to consolidate its underlying and Rule 69 actions as its affiliate Girard Street did, G&A can nevertheless freeride on Girard Street's discovery and trial evidence because its case against PDVH is similar. But the reverse is not true: PDVH cannot use the Girard Street discovery and trial evidence against G&A, and it is too late to begin discovery from scratch. This is manifestly unfair. G&A should live with its choices and not be permitted to add and drop legal positions and courtrooms at its convenience.

*Second*, as explained in PDVH's motion to dismiss the essentially identical (for alter ego purposes) Consolidated Amended Complaint ("CAC") in *Girard Street Investment Holdings LLC v. PDV Holding, Inc.*, No. 1:24-cv-4448 (S.D.N.Y.) ("*Girard Street*"), which is incorporated here by reference, the AC fails to satisfy the three strict prongs under Delaware law that would entitle G&A to the extraordinary remedy of reverse-piercing: (1) "fraud or similar injustice," (2) "exclusive domination and control," and (3) adequately alleging that reverse-piercing is equitable or in the public interest. G&A apparently seeks to persuade this Court that federal common law rather than Delaware law applies—even though it correctly admitted in the Texas Action that the "substantive law governing [its] judgment enforcement action is state law, not federal law," SDTX, Dkt. 34 at 2, and that "Delaware law would apply" because "PDVH is a Delaware corporation."

---

[1] PDVH moved to dismiss Girard Street's complaint in No. 1:24-cv-4448, G&A's complaint in the Texas Action, Girard Street's Consolidated Amended Complaint in No. 1:23-cv-10772 after Girard Street requested consolidation with No. 1:24-cv-4448, and now G&A's Amended Complaint here.

*Id.*, Dkt. 35 at 6.[2] Such gamesmanship must be rejected.

PDVH also notes that it has become even clearer since briefing its motion to dismiss in *Girard Street* that PDVSA's other creditors have acted in reliance on PDVH's corporate separateness in connection with the sale of PDVH stock underway in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS (D. Del.) ("*Crystallex*"), which provided a legal remedy that G&A failed to diligently seek and which is now threatened by this and related alter ego actions. *See*, *e.g.*, *Girard Street*, Dkt. 72 at 2–8 (Huntington Ingalls Incorporated motion to intervene describing positions of the *Crystallex* creditors and special master). The potential harm to third parties and the availability of a legal remedy by themselves dispose of G&A's attempt to invoke equity for its sole benefit under a reverse veil-piercing theory.

## Background

### I.  G&A Files In Texas, Conceding That This Action "Arises Under State Law," And Then Amends Its Complaint In This Court.

This is a suit on a series of promissory notes (collectively, the "Notes"). The contract giving rise to the Notes (the "Note Agreement") was executed in May 2017 between Venezuelan companies: PDVSA (issuer), Petróleo (guarantor), and Schlumberger Venezuela, S.A. ("SVSA"). ¶ 33.[3] On July 20, 2017, SVSA assigned the Notes to a corporate affiliate, ¶ 35, which thereafter assigned them to Cowen and Company, LLC in October 2018. ¶ 38. Cowen assigned the Notes to G&A on the same day. ¶ 41. In December 2023—five years after obtaining the Notes—G&A sued PDVSA and Petróleo based on purported breaches of contract that began in 2017 and ended in 2020. ¶¶ 54–

---

[2] In this, G&A is like its affiliate Girard Street—represented by the same counsel—which also changed its story about the applicable standard: Girard Street (incorrectly) contends that federal common law should apply even though it first asserted (also incorrectly) that the legal standard applicable to an alter ego claim against the U.S. subsidiary of a foreign instrumentality was a "question of first impression." *Girard Street*, Dkt. 33 at 6.

[3] Unless noted, the AC is cited as "¶ ___."

63, 73–74. This Court entered a default judgment on the Notes in March 2024. ¶¶ 82–83.

In June 2024, G&A filed an original petition in Texas state court to enforce its default judgment against PDVH, seeking both a declaration that PDVH is PDVSA's alter ego and a turn-over order against PDVH's property under Texas Civil Practice and Remedies Code § 35.004. *See* SDTX, Dkt. 1-2 at 28–29 (Exhibit A).[4] PDVH is a Delaware corporation formed in 1997[5] and wholly owned by PDVSA. *Id*. ¶¶ 9, 37. After removal to the Southern District of Texas, G&A moved to remand by contending that no federal question existed "because the substantive law governing [its] judgment enforcement action is state law, not federal law." *Id*. Dkt. 34 at 2; *see also id*. at 10 ("this action arises under state law, not federal law"); *id*. at 12 (same) (citing Fed. R. Civ. Proc. 69); *see also id*. Dkt. 56 ¶ 8 (G&A second motion to remand contending that state law governs).

PDVH also moved to dismiss because G&A had failed to plausibly allege alter ego. *See id*. Dkt. 17. In its opposition brief, G&A conceded that "Delaware law would apply" in this action because "PDVH is a Delaware corporation." *Id*. Dkt. 35 at 6. The motions for remand and to dismiss remain pending because, after this Court vacated G&A's default judgment on September 10, 2024, ¶ 86, the parties agreed to stay the Texas Action. SDTX, Dkt. 52; *see also id*. Dkt. 57 (stay order).

On November 21, 2024, G&A filed the AC in this Court. Though the AC alleges alter ego under Delaware law, ¶¶ 203–18, it tries to minimize G&A's earlier concession by placing these allegations after new alter ego allegations under federal common law. ¶¶ 194–202. The factual

---

[4] "Judicial notice may encompass the status of other lawsuits . . . and the substance of papers filed in those actions." *Paskar v. City of New York*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014).

[5] *See Girard Street*, Dkt. 51-1 (PDVH Certificate of Incorporation). *See GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017) (articles of incorporation filed with state authority are judicially noticeable on motion to dismiss).

allegations relating to alter ego are otherwise substantially identical to those in the *Girard Street* CAC. *Compare, e.g.*, AC ¶¶ 95–144 (allegations as to political/economic history and dividends), *with* CAC ¶¶ 77–125 (same). Nearly all material facts on which G&A relies to support its alter ego claim predate its 2018 purchase of the Notes. G&A mostly cites to news reports and other public sources for its allegations, and it does not and cannot allege that the lion's share of these facts was beyond public knowledge when it purchased the Notes. These include statements and conduct of Venezuelan government officials (¶¶ 96–99); Venezuela's and PDVSA's lack of funds to pay the Notes (¶¶ 104–07); dividends paid by PDVH to PDVSA starting in 2004 (¶¶ 128–40); debt and collateral issued in 2014–2015 by PDVH's subsidiary, CITGO Holding, Inc., which purportedly sent the funds up the chain to PDVSA and then to Venezuela (¶¶ 132–35); and the overlap of the PDVSA and PDVH boards of directors "[f]or decades" (¶ 162), including from 2000–2018 (¶¶ 167–79).

Two weeks after it filed the AC, G&A moved in the Texas Action to lift the stay that it previously agreed to and to transfer that case to this Court. SDTX, Dkt. 58. G&A contends that the case should be transferred to this Court in "the interest of judicial efficiency," but it does not address the prejudice to PDVH in discovery. *Id.* at 1; *see also Girard Street*, Dkt. 49 § III.D.6 (closing discovery in *Girard Street* by January 24, 2025). Moreover, while G&A maintained that it could have voluntarily dismissed the Texas Action, it declined to do so because it did not want to lose its place in the "order of priority" of "numerous creditors [who] are seeking to execute on property owned by either Venezuela or PDVSA. SDTX, Dkt. 58 at 9–10; *see also id.* at 8 (seeking transfer "because that is the only way to safeguard G&A's first-filed status and to avoid unnecessarily imperiling G&A's ability to dismiss voluntarily the action in the future without prejudice"). In making this argument, G&A does not address its avoidance of the *Crystallex* priority order. *See*

*infra* pp. 15–17. A response to the motion to transfer is not due until December 26.

## II.    G&A Participates In *Crystallex,* Where The Parties Have Explained The Prejudice Resulting To Them And To The Sale Process From The Alter Ego Actions Of G&A And Its Affiliates.

As the Court is aware, at about the time G&A purchased its Notes in 2018, creditors of PDVSA and the Republic—including G&A and its affiliates—began pursuing post-judgment enforcement proceedings in *Crystallex* to execute on PDVSA's shares of PDVH.[6] The *Crystallex* court appointed a special master to oversee a public auction of the shares. Eighteen creditors with over $21 billion in total judgments are participating in the proceedings before the federal court in Delaware.[7] G&A submitted filings in *Crystallex* about its progress toward a judgment against PDVSA[8] but missed the deadline to participate in the *Crystallex* sales process.[9]

In September 2024, the *Crystallex* special master moved to enjoin G&A from seeking to enforce any judgment against PDVH in a forum outside the federal court in Delaware. *See Girard Street*, Dkt. 51 at 6 n.8. The *Crystallex* court then invited the parties to submit their positions on the injunction motion.[10] ConocoPhillips, one of the principal *Crystallex* creditors who stands to collect billions of dollars from the proceeds of the PDVH share sale, supported the motion.[11] According to ConocoPhillips, proceedings in *Girard Street* "illustrate[] the need for the [injunctive]

---

[6] *See supra* n.4 (noting judicial notice of "other lawsuits"). No court has held that PDVH is PDVSA's or Venezuela's alter ego.

[7] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024).

[8] *See Crystallex*, Dkt. 1039, Dkt. 1039-1 (G&A's notification of receipt of judgment); *see also Crystallex*, Dkt. 759, Dkt. 759-1, Dkt. 759-2 (claim update); *Crystallex*, Dkt. 675, Dkt. 675-1 (claiming to be a "prospective holder" of an "[a]ttached [j]udgment" against PDVSA).

[9] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, Misc. No. 17-151-LPS, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (setting deadline to participate as a creditor by filing motion for writ of attachment "meaningfully in advance of … January 12, 2024[.]").

[10] *Crystallex*, Dkt. 1358.

[11] *Crystallex*, Dkt. 1395.

relief sought" by the special master.[12] ConocoPhillips explained that a bid for the PDVH shares may not be "executab[le]" if "[G&A [and] Girard Street] succeed," because *Crystallex* creditors may not then recover on their judgments since the value of the PDVH shares would be significantly lower.[13]

On November 20, 2024, the *Crystallex* court stated its preliminary inclinations that, although it may not necessarily be empowered to enjoin or impede the G&A and other alter ego actions, the sale process may be "negatively impacted" by those claims.[14] On November 26, 2024, several parties—including not just the creditors but also the special master and a potential purchaser—responded that the alter ego actions filed by G&A and its affiliates had substantially interfered with the sale process. The special master indicated that he was not aware of any unrelated third party willing to bid on the PDVH shares "without material conditionality related to pending alter ego cases."[15] He also asserted if Girard Street were to prevail here, PDVH's shares would become "worthless."[16] Crystallex and ConocoPhillips, two of the highest-priority creditors, supported the injunction because the alter ego actions would constitute an end-run around the sale process, nullify the value of the PDVH shares, and materially impair the prospects for external financing of a sale.[17] Amber Energy, the proposed buyer, stated that consummation of the sale was conditioned on an injunction and that the sale agreement would be "moot" if the alter ego claims

---

[12] *Crystallex*, Dkt. 1395 at 2 (referring to the order on Red Tree's intervention motion, *see Girard Street*, Dkt. 58).

[13] *Crystallex*, Dkt. 1395 at 2; *see also id*. Dkt. 1397 (Crystallex also supported the injunction motion because "[G&A's and its affiliates'] actions are without merit. Rather they are transparent attempts to circumvent this Court's priority order and are unlikely to succeed.").

[14] *Crystallex*, Dkt. 1433 at 6.

[15] *Crystallex*, Dkt. 1445 at 4.

[16] *Girard Street*, Dkt. 72 at 11 (citing *Crystallex*, Dkt. 1415 at 2).

[17] *Crystallex*, Dkt. 1438 at 4–5 (Crystallex), Dkt. 1442 at 1 (ConocoPhillips).

were not enjoined.[18]

On December 9, Venezuela creditor Huntington Ingalls Incorporated moved to intervene in *Girard Street* so that it could move to transfer that action to Delaware. *Girard Street*, Dkt. 72. It explained that according to some participants in the Delaware proceedings, the actions by G&A, Girard Street, and their Gramercy-entity controlling affiliates were threatening to subvert and impair the sale process. *Id*. at 2–8 (discussing the concerns of creditors).

On December 11, 2024, the *Crystallex* court denied the injunction motion for reasons set forth in a still forthcoming memorandum opinion. *Crystallex*, Dkt. 1493 at 1. As a result of the alter ego actions filed by G&A and its affiliates that "[have] been so detrimental to the sale process" that it must now "restart[]," according to proposed intervenor Huntington Ingalls Incorporated, the *Crystallex* court held a hearing on December 13, 2024, to solicit views on how and on what schedule to solicit new bids. *Girard Street*, Dkt. 72 at 6–7. At the hearing, Amber Energy confirmed that its bid is no longer operative in light of the court's denial of the injunction motion.

## III.    In An Effort To Halt This Alter Ego Action, ConocoPhillips Sues G&A, Which Moves To Dismiss Under The First-Filed Rule Because It Has A Case Pending In S.D. Texas.

To prevent G&A, Girard Street, and others from acting as a "roadblock to a sale of the PDVH shares,"[19] ConocoPhillips filed a complaint for declaratory or alternative relief. *ConocoPhillips*, Dkt. 1.[20] The complaint seeks a declaration that these reverse-piercing cases fail as a matter of law, *id*. ¶¶ 68–71, because G&A and Girard Street have an "adequate legal or equitable remedy available" in the *Crystallex* sales process, ¶ 60. It alleges that by their alter ego actions, G&A and Girard Street "have sought to insert themselves into the [*Crystallex*] priority order ahead

---

[18] *Crystallex*, Dkt. 1444 at 5.

[19] *Crystallex*, Dkt. 1395 (informing *Crystallex* court about the complaint).

[20] *See supra* n.4 (noting judicial notice of "other lawsuits").

of Crystallex and [other diligent creditors] by seeking to enforce their judgments and claims through reverse veil-piercing against PDVH." *Id*. ¶¶ 50, 53 (citing Ex. A). It further alleges that "[b]ecause the [*Crystallex* sales process] is plainly a legal remedy available to creditors of PDVSA and the Republic, reverse veil-piercing is unavailable" as a matter of law. *Id*. ¶ 61. Alternatively, ConocoPhillips seeks writs of attachment over PDVH's property on a reverse veil-piercing theory, both for itself and also for almost two dozen other judgment creditors, in a specific priority order set by the *Crystallex* court. *See id*. ¶¶ 72–76; *see also id*. ¶ 44 (describing priority order).

G&A and its affiliates—represented by the same counsel in this case—moved to dismiss the *ConocoPhillips* complaint. *See id.*, Dkt. 39. G&A argued that "the first-filed rule warrants dismissing or staying [the] suit" because it had already "filed [its] suit[] in the Texas state District Court for Harris County." *Id*. at 5, 13 (referring to Ex. A). That suit, G&A explained, "concern[s] the same set of facts" as in *ConocoPhillips* "and raises the exact same [legal] question, *i.e.*, whether PDVH is the alter ego of PDVSA for purposes of liability to Gramercy, G&A, and Girard Street." *Id*. at 13. Accordingly, G&A argued that "the first-filed rule warrants dismissing or staying" the *ConocoPhillips* complaint given that it has already raised the same issues in the Texas courts— "and Plaintiffs should not be allowed to bring this later-filed, duplicative action" before the federal court in Delaware. *Id*. On November 29, 2024—after it had filed the AC in this Court—G&A filed a second brief where it emphasized its position that "the first-filed rule" supports "promptly" dismissing the case in light of the pending Texas Action. *Id*., Dkt. 49 ¶ 6.

## Legal Standards

<u>First-Filed Doctrine</u>.  "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United*

*States*, 424 U.S. 800, 817 (1976)). Dismissal under the first-filed doctrine has also been granted under several subsections of Rule 12. *See, e.g.*, *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 77, 79 (2d Cir. 1989) (Rule 12(b)(1) and (b)(2)); *Lau v. Wells Fargo & Co*., No. 20-cv-03870 (AJN), 2021 WL 1198964, at *2 (S.D.N.Y. Mar. 30, 2021) (Rule 12(b)(3) and (b)(6)); *Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, No. 20 CIV. 1436 (ER), 2021 WL 1145245, at *5 (S.D.N.Y. Mar. 23, 2021) (Rule 12(b)(6)); *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751(PAE), 2012 WL 844284, at * 1 (S.D.N.Y. Mar. 13, 2012) (granting motion brought under "[Rule] 12(b)," without specifying subsection). Under Rule 12(b)(3), the plaintiff bears the "burden of establishing that it has chosen the proper venue," *Anonymous v. Kaye*, 104 F.3d 355 (2d Cir. 1996), and "the court may examine facts outside the complaint to determine whether venue is proper." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004). A "district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action," *Lau*, 2021 WL 1198964, at *5, but can go "beyond the allowable bounds of discretion" when it refuses to stay or dismiss a duplicative suit. *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1204 (2d Cir. 1970); *see also id*. at 1202–3 (neither the fact that plaintiff had instituted both actions nor that New York was a more logical forum were "sufficient grounds for departing from the general rule that in the absence of sound reasons the second action should give way to the first"); *accord AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (concluding that it was an abuse of discretion to adjudicate claims that had first been filed in Texas).

Rule 12(b)(6). To survive Rule 12(b)(6) dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor

of the plaintiff, *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016), it need

not credit "mere conclusory statements" or "threadbare recitals of the elements," *Iqbal*, 556 U.S.

at 678.

      <u>Applicable Law</u>.   G&A's judgment enforcement claims against PDVH are governed by

Rule 69(a). *See* AC Count III (seeking declaratory relief in support of a turnover under Rule 69),

Count IV (seeking a turnover order under Rule 69). As PDVH explained in its *Girard Street* motion

to dismiss, Rule 69 requires application of state law, which here (under New York choice-of-law

rules) is Delaware law. *See Girard Street*, Dkt. 51 at 6–7. As noted above, G&A conceded the point

multiple times in the Texas Action. *See* I, *supra*.

**Argument**

**I.    The Court Must Dismiss The Case Because The Same Alter Ego Issues Involving The Same Parties Are Already Pending Before The S.D. Texas Court.**

      "[T]he propriety of the forum [is] a threshold issue that must be considered before address-

ing the merits." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991). "Where two courts have concurrent

jurisdiction over an action involving the same parties and issues, courts will follow a 'first filed'

rule whereby the court which first has possession of the action decides it." *800-Flowers, Inc. v.*

*Intercontinental Florist, Inc*., 860 F. Supp. 128, 131 (S.D.N.Y. 1994). "Because parties 'should be

free from the vexation of concurrent litigation over the same subject matter,' there is a strong pre-

sumption that a later lawsuit will be dismissed." *Oleg*, 2012 WL 844284, at *3 (quoting *Adam*, 950

F.2d at 93).

      **A.   The First-Filed Rule Warrants Dismissal.**

      The first-filed rule "applies where the 'claims, parties, and available relief do not signifi-

cantly differ between the actions.'" *Lau*, 2021 WL 1198964, at *2 (quoting *Oleg*, 2012 WL 844284,

at *3). "Ordinarily, courts will dismiss the later-filed suit," *id*, because "[d]eference to the first

11

filing 'embodies considerations of judicial administration and conservation of resources,'" *Adam*, 950 F.2d at 90 (quoting *First City Nat'l*, 878 F.2d at 80); *see also Oleg*, 2012 WL 844284, at *3 (explaining that the "first-filed rule has long been applied" in the Second Circuit because "it promotes judicial efficiency by avoiding unnecessarily duplicative litigation").

Those considerations apply here. The claims, parties, and relief sought in the Texas Action, which G&A filed first in June 2024, are overwhelmingly the same as here, which G&A filed second in November 2024. *Compare* SDTX, Dkt. 1-2 ¶¶ 143–149 (seeking "declaratory judgment of alter ego status" between PDVH and PDVSA) and ¶¶ 150–54 (seeking turnover under state law), *with* AC Count III (seeking declaratory judgment "finding PDVH, as an alter ego of PDVSA, liable"), Count IV (seeking turnover under state law). The claims in both cases arise out of identical facts concerning PDVSA's default on the Notes and G&A's efforts to enforce that default against PDVH as the alleged alter ego. *See id*. The relief sought in both cases is likewise the same.

Given the requirement that "the district court consider the equities of the situation when exercising its discretion," *Curtis*, 226 F.3d at 138, it is also fair to apply the first-filed doctrine because that is what G&A itself urged in response to ConocoPhillips' suit involving the same issues and parties in Delaware. *ConocoPhillips*, Dkt. 39 (G&A contending that "the first-filed rule warrants dismissing" a substantially similar complaint because G&A had already "filed [its] suit[] in [] Texas" alleging alter ego liability). G&A reasoned that, as here, both alter ego cases "concern the same set of facts" and "raise[] the exact same [legal] question, *i.e.*, whether PDVH is the alter ego of PDVSA for purposes of liability to Gramercy, G&A, and Girard Street." *Id*. at 13. According to G&A, ConocoPhillips "should not be allowed to bring [a] later-filed, duplicative action." *Id.* The same reasoning should result in dismissal of G&A's own later-filed claim here. Indeed, G&A moved to transfer the Texas Action rather than voluntarily dismiss and refile it here precisely to

preserve the order of its alter ego filings as against other creditors. This is no small irony given that the purpose of the alter ego claim is to circumvent the priority order established by more diligent creditors in *Crystallex*. Thus, considering the equities, G&A should not be permitted to assert inconsistent positions before two federal courts merely to preserve its filing date.

**B.  Neither Exception To The First-Filed Rule Applies.**

There is a "strong presumption that a later lawsuit will be dismissed." *Oleg*, 2012 WL 844284, at *3. The Second Circuit has nevertheless recognized two exceptions: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal citations omitted). The "plaintiff bears the burden of demonstrating any special circumstances" or balance of convenience "justifying an exception to the rule." *800-Flowers*, 860 F. Supp. at 132. Neither exception supports G&A's claims here.

*First*, the balance of convenience does not favor this second-filed action. Courts look to "the ties between the litigation and the forum of the first-filed action" and consider several factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Lau*, 2021 WL 1198964, at *4; *see also Wausau*, 522 F.3d at 275 (noting that these factors "are essentially the same as those considered" in a motion to transfer venue).

These factors "do not carry much weight" for G&A because it originally "chose to litigate this suit" in Texas. *Lau*, 2021 WL 1198964, at *4. Filing there shows that "litigating in [Texas] will be of no substantial burden to Plaintiff" (Factors 1, 4, & 7). *Id*. With respect to the alter ego claims, Texas rather than New York will provide "easier access to documentary and testimonial

evidence" (Factors 2 & 3), *id.*, because PDVH's "principal place of business" is Houston, ¶ 17, and Texas is "the locus of operative facts" (Factor 5). The fact that evidence might be produced in *Girard Street* still does not favor New York since the two cases raise distinct facts concerning the original noteholders and time periods. *Compare* ¶¶ 33, 44 (assigning the Notes from Schlumberger Venezuela, S.A., in 2018), *with Girard Street* CAC, Dkt. 47 ¶¶ 28, 30 (assigning the Note from Servicios Halliburton de Venezuela, S.A., in 2021). This difference is significant under Factor 4 (convenience of the parties). Discovery is already well enough advanced in *Girard Street* that plaintiff has already served its expert reports. *See Girard Street*, Dkt. 49 § III.D (setting discovery schedule in *Girard Street*). G&A's alter ego case is essentially identical to Girard Street's, and thus it can benefit from the fact discovery that has already occurred. But PDVH cannot—the Texas Action has been stayed and discovery has not begun—and with only a few weeks until the close of fact discovery here, *see id.*, it is unduly burdensome to force PDVH to begin discovery from square one about such matters as SVSA's and G&A's knowledge, understanding, and intent with respect to the alter ego claims and PDVH's potential defenses.

*Second*, there are only a few "special circumstances" in which a "district court may dismiss the first-filed case" without giving priority to the balancing of convenience just described. *Wausau*, 522 F.3d at 275.[21] But this exception typically arises in a race to the courthouse between parties on opposite sides of the dispute. *See, e.g., id.* at 278 (remanding to district court to conduct balance-of-factors analysis where insurers filed New York suit after insureds filed California suit); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977), *aff'd,* 573 F.2d 1288 (2d Cir. 1978) (rejecting "special circumstances" exception and applying balance-of-factors

---

[21] Inapplicable examples include "an improper anticipatory declaratory judgment action," *Wausau*, 522 F.3d at 275, and patent infringement claims, *id.* at 275 n.3.

analysis where antitrust defendants sought to enjoin California suit filed by antitrust plaintiffs). One "special circumstance is 'where forum shopping *alone* motivated the choice of the situs for the first suit.'" *Wausau*, 522 F.3d at 276 (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)). In that instance, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full 'balance of convenience' analysis would not be necessary to determine that the second forum is more appropriate than the first." *Id*. There was no "race to the courthouse" situation here, and PDVH does not dispute that Texas has more than a de minimis connection to this litigation. Therefore, the balance-of-factors analysis applies and G&A's second suit should be dismissed.

## II.    In The Alternative, The Court Must Dismiss The Amended Complaint Because It Fails To State An Alter Ego Claim.

PDVH has repeatedly moved to dismiss the alter ego claims on the merits, and its most recent motion to dismiss Girard Street's CAC is fully briefed and pending before the Court. *Girard Street*, Dkt. 50 (motion), 51 (memorandum), 61 (reply). For the sake of economy, PDVH therefore incorporates in full the points and authorities set forth in that briefing and will not repeat itself. In summary, and as is equally true here:

*First*, the alter ego claims fail at the threshold because G&A has not and cannot allege facts plausibly showing misuse of the corporate form to commit "fraud or similar injustice." *See, e.g., Girard Street*, Dkt. 51 at 7–12, Dkt. 61 at 4–6. PDVH is not a "sham" and G&A's conclusory allegations do not demonstrate otherwise. As with Girard Street and *its* predecessor noteholder, there are no allegations that G&A nor the assigning prior noteholders were confused, misled, or deceived by matters of corporate form. The Notes were executed and acquired by sophisticated entities with eyes wide open as to the nature of the transaction, the relevant counterparties, and

with knowledge of the alleged facts that G&A now cites as evidence of alter ego. The alleged "fraud or similar injustice" is nothing more than the inability to collect on a judgment, and the acts complained of—PDVH's issuance of dividends and other payments to PDVSA—only *enhanced* PDVSA's ability to satisfy its debts.

*Second*, G&A has not alleged exclusive domination and control. *See*, *e.g.*, *Girard Street*, Dkt. 51 at 12–18, Dkt. 61 at 6–8. G&A, like its affiliate Girard Street, merely assets conclusory or otherwise insufficient allegations to satisfy this element. For example, G&A alleges that "PDVSA caused PDVH to transfer billions of dollars of CITGO dividends to PDVSA, . . . , leaving PDVSA and PDVH undercapitalized, unable to pay debts as they came due, and unable to make dividend payments." ¶ 5. Yet G&A alleges no facts in support. If anything, the allegations about repeated dividends or note issuances—despite inconsistent allegations of "undercapitaliz[ation]," *id*.— show that PDVSA's ability to pay its creditors (including G&A) was *enhanced* rather than impaired. *See, e.g.*, ¶¶ 133–34 (2015), ¶¶ 141–42 (2019). This does not support alter ego liability. G&A's attempt to allege facts pertaining to the other factors—solvency (¶¶ 192, 198), corporate formalities (¶ 198), "siphoning" (¶ 193), and general façade (¶¶ 167–81)—are similarly conclusory, implausible, inapplicable in a reverse-piercing context, or else show conduct that is typical between a parent and its wholly owned subsidiary.

*Third*, G&A has not adequately alleged that reverse-piercing is equitable or in the public interest. *See*, *e.g.*, *Girard Street*, Dkt. 51 at 18–22, Dkt. 61 at 8–9. G&A, like its affiliate Girard Street, instead shows that reverse-piercing here would be *in*equitable. Recent developments in *Crystallex* have only bolstered this concern. *See* II, *supra*; *see also Girard Street*, Dkt. 72 at 5–8 (explaining "new developments"). In particular, G&A asserts the conclusory allegation that "[i]nnocent third-party creditors of PDVH will not be harmed if the Court pierces the veil between

16

PDVSA and PDVH." ¶ 240(k). To recall, this is one of the critical factors for reverse-piercing set forth by the Delaware Chancery Court in *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 715 (Del. Ch. 2021). The *Manichaean* court noted that *"[o]nly in cases alleging egregious facts, coupled with the lack of real and substantial prejudice to third parties*, should the court *even consider* utilizing the reverse veil-piercing doctrine." *Id*. at 714 (emphasis added). Some of the existing judgment creditors, who acted far more diligently than G&A (which did not file suit on the Notes for five years and missed the sale process deadlines in *Crystallex*), have asserted that they would suffer "real and substantial prejudice" from G&A's effort to skip the attachment priority line. Though PDVH believes that the alter ego claims are legally and factually meritless, the concerns expressed by these third parties are exactly the kind that bar reverse piercing under *Manichaean* and would be mooted by dismissal. In any event, the sale process demonstrates that G&A had an adequate legal remedy, which does not mean the certainty of collection but rather a remedy available as a matter of right. *Id*. at 721 (noting that the fact that plaintiffs' remedy "has yet to deliver satisfaction does not mean it is legally inadequate").

*Finally*, as G&A conceded in the Texas Action, Delaware law applies to the alter ego analysis of a U.S. corporation in this Rule 69 proceeding, not federal common law as reflected in such cases as *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") and its progeny. *See*, *e.g.*, *Girard Street*, Dkt. 51 at 22–25, Dkt. 61 at 1–3, 9–10. Even so, G&A's allegations fail to allege alter ego under that standard as well. The allegations relating to the supposed domination of PDVH's day-to-day operations show only the kind of conduct that is ordinary or even obligatory between corporate parents and subsidiaries. The "fraud or injustice" allegations fail for the same reasons as previously described, and for the further reason that there is no concern here, as in *Bancec*, of a foreign state who avails itself of American courts to recover on a claim while using its immunity and corporate separateness as a shield to avoid a counterclaim in the

same case. On the contrary, PDVSA is not invoking immunity in the underlying action here.

## Conclusion

PDVH respectfully requests that the Court dismiss Counts III and IV of the Amended Complaint with prejudice.

Dated: December 13, 2024

Respectfully submitted,

By: /s/ *Nathan P. Eimer*

Nathan P. Eimer (#1976067)
neimer@eimerstahl.com
Scott C. Solberg
ssolberg@eimerstahl.com
James W. Joseph
jjoseph@eimerstahl.com
Daniel D. Birk
dbirk@eimerstahl.com
Gregory M. Schweizer
gschweizer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Counsel for Defendant*
*PDV Holding, Inc.*