**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                        :

G&A STRATEGIC INVESTMENTS I LLC,
*et al.*,
                        :

           *Plaintiffs,*
                        :

       -*v.*-                 :   No. 1:23-cv-10766-JSR

PETRÓLEOS DE VENEZUELA, S.A., *et al.*,
                        :

         *Defendants.*
                        :

------------------------------------------------------------x
                        :

GIRARD STREET INVESTMENT
HOLDINGS LLC,
                        :

           *Plaintiff,*
                        :

       -*v.*-                 :   No. 1:24-cv-04448-JSR

PDV HOLDING, INC.,
                        :

         *Defendant.*
                        :

------------------------------------------------------------x

**AMICUS BRIEF OF CREDITORS IN THE DELAWARE SALE PROCESS**
**IN SUPPORT OF PDVH'S MOTION FOR SUMMARY JUDGMENT**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1(a), Crystallex International Corporation certifies that it has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

ConocoPhillips Petrozuata B.V. is a wholly owned subsidiary of Conoco Orinoco Inc., which is a wholly owned subsidiary of ConocoPhillips Company, which is a wholly owned subsidiary of ConocoPhillips, which is publicly traded. ConocoPhillips Hamaca B.V. is a wholly owned subsidiary of Phillips Petroleum International Investment Company LLC, which is a wholly owned subsidiary of Phillips Investment Company LLC, which is a wholly owned subsidiary of ConocoPhillips Company, which is a wholly owned subsidiary of ConocoPhillips, which is publicly traded. Phillips Petroleum Company Venezuela Limited is a wholly owned subsidiary of Hamaca Holding LLC, which is a subsidiary of ConocoPhillips Hamaca B.V., which is a wholly owned subsidiary of Phillips Petroleum International Investment Company LLC, which is a wholly owned subsidiary of Phillips Investment Company LLC, which is a wholly owned subsidiary of ConocoPhillips Company, which is a wholly owned subsidiary of ConocoPhillips, which is publicly traded. ConocoPhillips Gulf of Paria B.V. is a wholly owned subsidiary of Conoco Petroleum Operations Inc., which is a wholly owned subsidiary of Burlington Resources LLC, which is a wholly owned subsidiary of ConocoPhillips Company, which is a wholly owned subsidiary of ConocoPhillips, which is publicly traded. ConocoPhillips has no parent corporation, and no publicly held corporation owns ten percent or more of its stock. ConocoPhillips is the indirect owner of ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., Phillips Petroleum Company Venezuela Limited, and ConocoPhillips Gulf of Paria B.V.

Northrop Grumman Ship Systems, Inc. is now, by merger, Huntington Ingalls Incorporated.  Huntington Ingalls Incorporated is a wholly owned subsidiary of Huntington Ingalls Industries, Inc.  Huntington Ingalls Incorporated's parent company, Huntington Ingalls Industries, Inc., is a publicly traded company.  Vanguard Group, Inc. holds 10% or more of Huntington Ingalls Industries, Inc.'s stock.

Pursuant to Federal Rule of Civil Procedure 7.1(a), Red Tree Investments, LLC certifies that it has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

Page

INTEREST OF AMICI CURIAE ................................................................................. 1

INTRODUCTION ..................................................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.     Plaintiffs Cannot Demonstrate That PDVH Is The Alter Ego Of PDVSA
          Under *Bancec* ................................................................................. 3

    II.    Plaintiffs Cannot Demonstrate An Alter-Ego Relationship Under The
           Applicable Delaware Law Standard .................................................. 11

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
    122 F.3d 130 (2d Cir. 1997)..................................................................................13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
    596 U.S. 107 (2022)...........................................................................................13

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
    752 A.2d 1175 (Del. Ch. 1999)...........................................................................13

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-
    Exploración y Producción*,
    832 F.3d 92 (2d Cir. 2016)...........................................................................4, 10

*Crosse v. BCBSD, Inc.*,
    836 A.2d 492 (Del. 2003) ..................................................................................13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2021 WL 129803 (D. Del. Jan. 14, 2021)...........................................................8

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019)...............................................................................10

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ...........................................................................................12

*Dunlop-McCullen v. Loc. 1-S, AFL–CIO–CLC*,
    149 F.3d 85 (2d Cir. 1998).................................................................................4

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)...........................................................................2, 3, 4, 10

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995)..............................................................................13

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)...............................................................................4

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)...........................................................................................13

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
    251 A.3d 694 (Del. Ch. 2021)......................................................................13, 14

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    73 F.4th 157 (3d Cir. 2023) ...............................................................................4

*In re Platinum & Palladium Antitrust Litig.*,
    61 F.4th 242 (2d Cir. 2023) ..............................................................................13

*Promisel v. First Am. Artificial Flowers, Inc.*,
  943 F.2d 251 (2d Cir. 1991)..................................................................................13

*Rubin v. Islamic Republic of Iran*,
  583 U.S. 202 (2018)...............................................................................................4

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*,
  965 F.2d 1375 (5th Cir. 1992) ...............................................................................4

**Statutes**

28 U.S.C. § 1330(a) .................................................................................................12

28 U.S.C. § 1332(c)(1) .............................................................................................12

28 U.S.C. § 1603(b) .................................................................................................12

28 U.S.C. § 1603(b)(3) .............................................................................................12

**Rules**

Fed. R. Civ. P. 54(b) ...............................................................................................11

## INTEREST OF AMICI CURIAE[1]

*Amicus curiae* Crystallex International Corporation is a Canadian gold mining corporation that holds an approximately $1.2 billion judgment against the Government of Venezuela. Venezuela refused to pay the judgment and Crystallex registered it in the District of Delaware. In 2018, Crystallex attached Petróleos de Venezuela, S.A.'s ("PDVSA") shares in PDV Holding, Inc. ("PDVH"), having established that the shares nominally owned by PDVSA—Venezuela's state-owned oil company—were in fact the property of Venezuela. Judge Leonard Stark appointed a Special Master to devise a process for the judicial sale of the PDVH shares to satisfy Crystallex's judgment. Since then, additional judgment creditors holding over $20 billion of unsatisfied judgments have registered their judgments in Delaware and been added to the sale. These additional judgment creditors include *amici curiae* ConocoPhillips Petrozuata B.V., ConocoPhillips Gulf of Paria B.V., Phillips Petroleum Company Venezuela Limited, ConocoPhillips Hamaca B.V. (collectively, "ConocoPhillips"), Huntington Ingalls Incorporated, and Red Tree Investments, LLC. A judicial sale of those shares is currently scheduled for July 22, 2025. After pursuing their claims for years, *amici curiae* are finally about to receive compensation for their losses. Were this Court to rule for Plaintiffs on their alter ego assertions, its ruling would unravel years of painstaking work by the Delaware Court, and it would deny justice to creditors like *amici* that diligently prosecuted their claims. *Amici* accordingly have a significant interest in these proceedings.

---

[1] *Amici curiae* certify that (1) this brief was not authored by counsel for any party, in whole or in part; (2) no party or counsel for any party contributed money to fund preparing or submitting the brief; and (3) apart from *amici curiae* and their counsel, no other person contributed money to fund preparing or submitting this brief.

## INTRODUCTION

Like countless other creditors of PDVSA and Venezuela, Plaintiffs have sued to collect on debts that PDVSA incurred to their predecessors-in-interest. But unlike dozens of other creditors that diligently pursued their claims, obtained judgments, and then attached PDVSA's shares in PDVH, Plaintiffs slept on their rights for years. Worse, Plaintiffs were already late to the game when they acquired the PDVSA notes in 2018 and in 2021, when those notes were already in default. By that point Crystallex had already attached the PDVH shares and all of PDVSA's attendant rights of stock ownership, restricting, among other things, any ability of PDVH to distribute dividends up the chain of ownership to PDVSA, and the U.S. government had prohibited the making of any payments from PDVH to PDVSA without a license under OFAC sanctions put in place in August 2017. Plaintiffs acquired the notes nonetheless, but delayed bringing an action against PDVSA until December 2023, and Plaintiffs did not bring these alter-ego claims against PDVH until June 2024.

No standard for disregarding a corporation's separate juridical existence justifies piercing PDVH's corporate veil to accord relief to Plaintiffs. The federal common-law standard for piercing the veil of a foreign instrumentality announced in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") derives from flexible principles of equity and is designed to prevent a foreign state from hiding behind an instrumentality's ostensibly separate identity when doing so would unjustly deny a party relief or allow the foreign state to avoid its obligations. But equity aids the vigilant, not those who sleep on their rights, and relief in equity is not available to those with unclean hands or who act unfairly. Plaintiffs fall woefully short of that standard.

Moreover, Plaintiffs cannot show, as they must, that PDVH and PDVSA should be treated as alter egos *today*, not some time in the distant past before OFAC sanctions and the Crystallex

attachment of the PDVH shares seriously impeded the ability of the Maduro regime and PDVSA to exercise control over PDVH's assets. Yet the vast majority of Plaintiffs' alter-ego allegations against PDVH date back many years, with some going decades into the past. Indeed, as matters stand *today*, Venezuela and PDVSA lack any residual economic interest in PDVH or its assets: As a result of the impending judicial sale, that entire value will go to creditors like *amici* who, unlike Plaintiffs, diligently participated in that process.

Furthermore, although this Court previously held that *Bancec* provides the applicable standard for determining whether to pierce the veil of a subsidiary of a foreign instrumentality, *amici* respectfully urge the Court to reconsider that conclusion. Under the law of Delaware—where PDVH is incorporated—Plaintiffs must show *both* extensive control *and* fraud or injustice, and they must also show that piercing PDVH's corporate veil would not harm innocent third-party creditors. This Court has already determined that Plaintiffs cannot demonstrate that PDVSA abused PDVH's corporate form to perpetrate a fraud or injustice against them, and disregarding PDVH's separate identity would plainly harm the dozens of third-party creditors participating in the sale of PDVSA's shares in PDVH. Plaintiffs therefore cannot satisfy the governing Delaware standard for piercing PDVH's corporate veil.

This Court should grant PDVH's motion for summary judgment.

## ARGUMENT

### I.    Plaintiffs Cannot Demonstrate That PDVH Is The Alter Ego Of PDVSA Under *Bancec*

In *Bancec*, the Supreme Court established the presumption that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." 462 U.S. at 626-27. But it held that "equitable principles" indicated that a corporation "is not to be regarded as legally separate from its owners in all

circumstances," such as "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created" or "'when to do so would work fraud or injustice.'" *Id.* at 629-30.  Applying those principles, the Court "decline[d] to adhere blindly to the corporate form" because "doing so would cause such an injustice."  *Id.*  The Court emphasized that its decision was "the product of the application of internationally recognized equitable principles to avoid the injustice that would result from permitting a foreign state to reap the benefits of our courts while avoiding [its] obligations."  *Id.* at 633-34.  *Bancec* thus left to lower courts the task of determining whether equity required them to pierce a company's corporate veil to avoid injustice "on a case-by-case basis."  *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 210 (2018).

Although courts consider so-called "*Bancec* factors" to aid in alter-ego determinations, 583 U.S. at 210, they "also take seriously the Supreme Court's caution that *Bancec* wrote no 'mechanical formula' for disregarding juridical separateness."  *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 168 (3d Cir. 2023); *see also Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 103 (2d Cir. 2016) (recognizing that "*Bancec* disclaimed a 'mechanical formula'"); *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1382 (5th Cir. 1992) ("[t]he actual holding of *Bancec* … establishes only that a court must be sensitive to the extent to which the foreign government will be the real beneficiary of litigation").

It would be highly inequitable to disregard PDVH's separate corporate identity in these cases.  It is a fundamental equitable maxim that "'equity aids the vigilant, not those who sleep on their rights.'"  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).  Nor does equity lend its aid to those with unclean hands, "'since equity tries to enforce good faith in defendants, it no less stringently demands the same faith from the plaintiff.'"  *Dunlop-McCullen*

*v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) (equity "'does require that [parties] shall have acted fairly'").

G&A Strategic acquired its notes on October 29, 2018, Dkt. 89, ¶ 41, *G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, No. 1:23-cv-10766-JSR (S.D.N.Y. Nov. 21, 2024) ("G&A Compl."), and Girard Street acquired its note on January 14, 2021, Dkt. 47, ¶ 30 ("Girard St. Compl.").[2] PDVSA had already defaulted on the notes, and Plaintiffs purchased them for the purpose of bringing litigation to collect on PDVSA's debts. G&A Compl. ¶ 60; Girard St. Compl. ¶ 41. Before purchasing the notes, Plaintiffs were aware of PDVSA's business and financial condition, that PDVSA and PDVH had a separate corporate relationship, and that no PDVH assets were collateral for the notes. Plaintiffs were also aware of Crystallex's August 2018 attachment of the PDVH shares "and any other assets or rights incident to that stock ownership"—including PDVSA's indirect ownership of the assets of PDVH and its rights to receive dividends. Dkt. 95, at 7, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-00151-LPS (D. Del. Aug. 23, 2018) ("*Crystallex* Dkt.").[3] Plaintiffs thus purchased their notes knowing that the value of PDVSA's ownership interest in PDVH was subject to Crystallex's prior attachment and that any right they might have to recover from the value of PDVSA's ownership of PDVH would be junior to Crystallex. Yet Plaintiffs waited nearly three years, in the case of Girard Street, and over five years, in the case of G&A Strategic, to sue to collect on the defaulted notes. Dkt. 1, *Girard St. Inv. Holdings LLC v. Petróleos de Venezuela, S.A.*, No. 1:23-cv-10772-JSR (S.D.N.Y. Dec. 11,

---

[2] Unless otherwise noted, all citations in the form "Dkt. _" refer to docket entries in *Girard St. Inv. Holdings LLC v. PDV Holding, Inc.*, No. 1:24-cv-04448-JSR (S.D.N.Y.).

[3] For the avoidance of doubt, Crystallex's attachment has prohibited the payment of dividends from PDVH to PDVSA continuously since August 2018. The Third Circuit stayed enforcement during PDVSA's direct appeal from that order, but that stay merely prevented Crystallex (temporarily) from taking additional steps to execute its judgment.

2023); Dkt. 1, *G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, No. 1:23-cv-10766-JSR (Dec. 11, 2023).

In the meantime, numerous other creditors of PDVSA and Venezuela were diligently pursuing their claims. By the time Plaintiffs filed their original complaints against PDVSA, creditors holding over two dozen judgments totaling over $20 billion had already registered their judgments in the District of Delaware and moved to attach PDVSA's shares in PDVH. *Crystallex* Dkt. 1102, at 3-5 (listing the dates on which creditors of Venezuela and PDVSA moved to attach the PDVH shares); *Crystallex* Dkt. 1140-1 (listing amounts of the judgments). Crystallex was able to perfect its attachment in August 2018, but beginning in November 2018, the federal government—through executive orders and regulations of the Office of Foreign Assets Control ("OFAC")—imposed additional sanctions against Venezuela blocking dealings in its property, including the "issuance of new writs of attachment on Venezuelan assets in the United States without an OFAC license." *Crystallex* Dkt. 234, at 15. Yet many creditors nonetheless diligently sought—and obtained—"conditional writs of attachment" authorizing the attachments upon receipt of an OFAC license. *Crystallex* Dkt. 646, at 6.

These creditors did so to recover from the proceeds of a judicial sale of the PDVH shares being conducted by the Delaware Court "to satisfy the outstanding judgment of Crystallex and the judgment of any other judgment creditor added to the Sale by the Court." *Crystallex* Dkt. 277, at 3. To assist with the sale, the Delaware Court appointed a Special Master, who devised procedures for the sale, which that court adopted in an October 11, 2022 order. *Crystallex* Dkt. 481. That order set forth the requirements for additional creditors to participate in the sale process. A further order setting out the criteria for determining the relative priority of judgments was entered on July 27, 2023. *Crystallex* Dkt. 646. In April 2024, the court determined the final priority and amount

of the judgments held by *amici* and the other additional judgment creditors.  *Crystallex* Dkt. 1102

(priority order); *Crystallex* Dkt. 1136 (order determining amount of judgments).

Gramercy Distressed Opportunity Fund, LLC, an affiliate of Plaintiffs, completed the steps

necessary to participate in the Delaware sale process as an additional judgment creditor.  However,

it was 16th in priority, "with more than $18 billion of judgments ahead of it."  *Crystallex* Dkt.

1515, at 4.  Dissatisfied with its place near the bottom of the queue, Gramercy moved for

reconsideration of the priority order, and, having lost, *Crystallex* Dkt. 963, responded to the news

that it was unlikely to recover in the Delaware sale process by filing an alter-ego claim against

PDVH in Texas state court.  *Crystallex* Dkt. 1515, at 4.  Without bothering to seek a judgment,

Plaintiffs themselves belatedly attempted to participate in the sale process in August 2023, long

after they had acquired the claims, but—due to their delay in bringing their claims against

PDVSA—were not entitled to.  *See Crystallex* Dkt. 1102.

Realizing that they would not have an opportunity to receive any proceeds from the judicial

sale of the PDVH shares, Plaintiffs filed claims against PDVH in June 2024, asserting an

entitlement to recover from the assets of PDVH on the theory that PDVH is the alter ego of

PDVSA.  Plaintiffs' alter-ego claims against PDVH are insufficient as a matter of law because

they rely on outdated allegations of extensive control that do not account for intervening changes

in the relationship between PDVSA and PDVH.  To demonstrate that it is equitable to execute on

the assets of PDVH "to recover the debt owed to [them] by PDVSA," Girard St. Compl. ¶ 199;

G&A Compl. ¶ 218, Plaintiffs must show that the entities are alter egos *today—i.e.*, the time at

which they seek a turnover of the assets of PDVH.  The "pertinent time" to determine "alter ego"

status is thus "the period between the filing of the motion seeking a writ of attachment and the

subsequent issuance and service of that writ." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 129803, at *6 (D. Del. Jan. 14, 2021).

Plaintiffs' alter-ego allegations are stale and not probative of current practical and economic realities, focusing specifically "between 2014 and 2017," and more broadly "prior to 2019," to support their argument that PDVH is PDVSA's alter ego. Dkt. 123, at 2; *see* G&A Compl. ¶ 5 (identifying events in the "fall of 2016" as Plaintiffs' primary example of relevant conduct); Girard St. Compl. ¶ 5 (same). Indeed, some of Plaintiffs' allegations are over 20 or 30 years old. *See, e.g.*, Girard St. Compl. ¶ 109 (alleging a 2004 dividend payment); *id.* ¶ 149 (alleging overlapping directors of PDVSA and PDVH "in the 1990s"). By contrast, Plaintiffs make largely conclusory and general allegations about more recent and more relevant conduct "[a]fter 2019"—a period of over five years and counting. G&A Compl. ¶ 92; Girard St. Compl. ¶ 74. The paucity of any concrete allegations after 2019 demonstrating that PDVSA exercises extensive control over PDVH is a telling indication that PDVH is not the alter ego of PDVSA today, the time at which Plaintiffs are seeking to levy on PDVH's assets to satisfy PDVSA's debt.

But even if Plaintiffs' alter-ego allegations were not woefully outdated, Plaintiffs would not be entitled to relief on their alter-ego claims because it would be highly inequitable to accord relief to them. It is readily apparent that these alter-ego actions (like those in Texas) were filed in response to Plaintiffs' inability to receive any proceeds from the judicial sale of the PDVH shares. The sole reason Plaintiffs are pursuing an alter-ego claim is that they failed—whether due to a lack of diligence or to a misguided strategic decision—to obtain writs of attachment early enough to hold a sufficiently high priority to recover in the Delaware sale process. That failure does not entitle Plaintiffs to any greater right to the assets of PDVH to satisfy their debts than the dozens of other creditors of PDVSA and its alter ego Venezuela who diligently prosecuted their claims,

obtained judgments, attached the PDVH shares, and, as a result, have an opportunity to receive the proceeds from the fast-approaching judicial sale.

Plaintiffs purchased their notes in 2018 and 2021 knowing that they were already in default and knowing that Crystallex had already attached the PDVH shares, including all PDVSA's rights incident to its ownership of PDVH.  Indeed, Plaintiffs' purchase of the defaulted notes "for the 'primary purpose' of bringing a suit" may very well itself have constituted inequitable champerty and maintenance.  Dkt. 71, at 8.  Years later, Plaintiffs brought the instant actions, well after other creditors had spent several years pursuing their claims against Venezuela and PDVSA and had spent several years more seeking to enforce judgments in their favor.  For example, Crystallex pursued its claims against Venezuela for five years in arbitration, followed by nearly nine years of litigation (and counting) to obtain long-overdue compensation for the illegal expropriation of a gold mine in Venezuela.  *Crystallex* Dkt. 1180, at 13.  ConocoPhillips has been pursuing its claims to obtain relief for Venezuela's illegal confiscation of its investments in crude oil projects since *2007* and has been pursuing its claims against PDVSA since it commenced an arbitration proceeding in 2014.  Dkt. 36, at 4-18, *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, No. 24-1071 (3d Cir. Apr. 17, 2024).  And Tidewater Investment SRL has been seeking redress for the expropriation of its investments to provide maritime support services to the Venezuelan oil-and-gas industry for over 15 years.  Dkt. 5, at 2, *Tidewater Investment SRL v. Bolivarian Republic of Venezuela*, No. 1:19-mc-00079-LPS (D. Del. Nov. 15, 2019).  It is from these and other diligent creditors that Plaintiffs are opportunistically attempting to poach the value of PDVH's assets.  Less deserving recipients of this Court's equity are hard to imagine.

The entire point of the *Bancec* veil-piercing analysis is to prevent ***a foreign state*** "from hiding behind a juridical entity" that is ostensibly separate from the foreign state but is in fact its

alter ego, when doing so would unjustly deny the claimant relief to which it is entitled. *Corporación Mexicana*, 832 F.3d at 103; Dkt. 116, at 8. *Bancec* determined that assets that rightly should be available to a sovereign's creditors cannot be kept from those creditors by shielding an instrumentality whose separate existence from the sovereign is a mere sham. Here, nothing is being shielded—the sovereign's assets are already available to creditors and are being sold in the Delaware sale process. Honoring PDVH's separate corporate identity would not allow PDVSA to unjustly avoid its obligations nor otherwise benefit PDVSA or Venezuela—neither of which has any realistic residual interest in PDVH. Rather, it would respect the legitimate claims and expectations of dozens of judgment creditors who "have relied on [PDVH's] separate juridical identity" by attaching PDVSA's shares in PDVH. *Bancec*, 462 U.S. at 631-32. Declining to pierce PDVH's corporate veil would help to *ensure* that PDVSA and Venezuela satisfy their obligations to diligent judgment creditors to which they owe billions of dollars. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 149 (3d Cir. 2019) ("Any outcome where Crystallex is not paid means that Venezuela has avoided its obligations."). To grant the equitable relief Plaintiffs seek would stand *Bancec* on its head, using it to *deprive* creditors of Venezuela and PDVSA of the value of PDVH.

Nor would honoring PDVH's separate corporate identity result in any injustice to Plaintiffs. They cannot offer any persuasive rationale for how any alleged stale abuses of PDVH's corporate form resulted in any injury to them whatsoever. For example, Plaintiffs claim that PDVH "issued outsized dividends for the benefit of PDVSA" years ago between 2004 and 2015, leaving PDVH undercapitalized. Girard St. Compl. ¶¶ 109-20, 179; G&A Compl. ¶¶ 128-39, 194. But, if true, large dividends to PDVSA should have *improved* its ability to satisfy its debt obligations to Plaintiffs. Thus, any injury to Plaintiffs resulted not from PDVSA's alleged siphoning of assets

from PDVH but from PDVSA's refusal to make payments in accordance with the note agreements. Plaintiffs also complain (inconsistently) that "PDVSA's creditors have been denied recourse to dividend payments from PDVSA's subsidiaries that would have flowed to PDVSA in the ordinary course." Dkt. 123, at 2. But that is because OFAC sanctions and Crystallex's 2018 attachment have for years now prohibited PDVH from paying dividends—which *preserved* PDVH's value for Venezuela's and PDVSA's creditors who acted diligently in Delaware. Nothing in that contravenes *Bancec* or is inequitable in any other sense.

## II.    Plaintiffs Cannot Demonstrate An Alter-Ego Relationship Under The Applicable Delaware Law Standard

This Court should also grant PDVH's motion for summary judgment because Plaintiffs cannot demonstrate that PDVH—a private Delaware corporation that is not an instrumentality of a foreign state—is the alter ego of PDVSA under the Delaware veil-piercing standard. *Amici* acknowledge that this Court held in its order denying PDVH's motion to dismiss that the determination of whether PDVH is the alter ego of PDVSA is governed by *Bancec* rather than Delaware law. Dkt. 116, at 6. But "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see* Dkt. 123, at 6 (Plaintiffs noting that Rule 54(b) permits this Court to revise its prior orders any time prior to entry of final judgment). Respectfully, *amici* urge the Court to reconsider its decision that *Bancec* governs the determination of whether to disregard PDVH's separate corporate existence and hold that Plaintiffs have not made the showing required to do so under the applicable Delaware-law standard.

The Court previously held that "*Bancec* set forth the substantive law governing the attribution of liability among *entities of a foreign state*, and this Court must apply it." Dkt. 116, at

10 (emphasis added).  Applying *Bancec* here assumes that PDVH is an entity of a foreign state, but Plaintiffs have not yet proven that PDVH is the alter ego of PDVSA and thus an instrumentality of Venezuela.  Unless and until they do, PDVH is presumptively a private Delaware corporation, not an entity of a foreign state.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities" and "[t]he fact that the shareholder is a foreign state does not change the analysis.").

The FSIA defines an "agency or instrumentality of a foreign state" as a separate entity that is not a "citizen of a State of the United States" "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."  28 U.S.C. § 1603(b).  "[A] subsidiary of an instrumentality is not itself" an instrumentality under this definition because § 1603(b) "refers to ownership of 'shares,' showing that Congress intended statutory coverage to turn on formal corporate ownership."  *Dole*, 538 U.S. at 473-74.  The determination of whether a corporation is an instrumentality of a foreign state depends on whether a foreign state "own[s] shares" in the corporation "as a matter of corporate law," regardless of whether the foreign state could be said to own the company "in everyday parlance" or in "the colloquial sense" because "[i]n issues of corporate law structure often matters."  *Id.* at 474.  Because PDVH is a citizen of Delaware, 28 U.S.C. §§ 1332(c)(1), 1603(b)(3), and because Venezuela does not directly own a majority of PDVH's shares and "owns" PDVH only indirectly through PDVSA, PDVH is not an instrumentality of a foreign state under the FSIA.  Dkt. 116, at 7.

For this reason, unlike with respect to PDVSA, this Court cannot exercise federal-question jurisdiction over PDVH because claims against PDVH are not "action[s] against a foreign state" under the FSIA.  28 U.S.C. § 1330(a).  Instead, Plaintiffs have invoked diversity and supplemental jurisdiction over PDVH.  Girard St. Compl. ¶¶ 20-21; G&A Compl. ¶ 18.  It is "long-settled" that

"a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *see also In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 275 n.11 (2d Cir. 2023); *see Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). A federal court exercising supplemental jurisdiction is also "bound to apply state substantive law," including state choice-of-law rules. *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991).

New York's choice-of-law rule is that "the law of the state of incorporation determines when the corporate form will be disregarded." *In re Platinum*, 61 F.4th at 275 n.11 (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). In this case, that is Delaware law "because PDVH is a Delaware corporation." Dkt. 116, at 5. Under Delaware law, a plaintiff seeking to pierce a corporate veil must show *both* extensive control *and* fraud. "The degree of control required to pierce the veil is 'exclusive domination and control.'" *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). Delaware courts consider a number of factors in making this determination, including "'whether, in general, the company simply functioned as a façade for the dominant shareholder.'" *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021). There must also be "'an overall element of injustice or unfairness.'" *Id.* at 707. Specifically, "the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *see Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.").

Delaware law also imposes special requirements applicable to reverse veil-piercing—*i.e.*, piercing the veil of a subsidiary to satisfy the debts of its parent. Because a reverse veil-piercing claim "can threaten innocent third-party creditors and shareholders and lead to a host of unpredictable outcomes for these constituencies," "[o]nly in cases alleging egregious facts, coupled with the lack of real and substantial prejudice to third parties, should the court even consider utilizing the reverse veil-piercing doctrine." *Manichaean Cap.*, 251 A.3d at 714. In addition to the factors required to allege a traditional alter-ego claim in Delaware, a reverse veil-piercing claim requires a court to consider eight "additional factors," including "the extent to which the reverse pierce will harm innocent third-party creditors," as well as "all relevant factors … to reach an equitable result" given that veil piercing "is rooted in equity." *Id.* at 715. "[A]s a practical matter, the consideration of whether the reverse pierce will cause harm to innocent third parties will substantially limit the doctrine's application" and "the case meeting this rigid framework for reverse veil-piercing can safely be classified as a 'rare bird.'" *Id.* at 715 n.124.

Plaintiffs cannot possibly satisfy the stringent Delaware-law standard that applies for disregarding PDVH's separate corporate identity. The standard requires a showing of both extensive control *and* fraud or injustice. This Court has already held that Plaintiffs "have not sufficiently alleged alter ego liability under the fraud or injustice prong of *Bancec*," Dkt. 116, at 20, and it denied Plaintiffs' request to address a fraud-or-injustice theory in their summary-judgment briefing as "futile," Dkt. 130, at 2. Moreover, disregarding PDVH's separate juridical identity would cause significant harm to innocent third parties because it would jeopardize the ability of dozens of more diligent and senior creditors of Venezuela and PDVSA holding over $20 billion worth of judgments—and who attached the PDVH shares in reliance on its separate corporate identity—to recover on their judgments.

14

## CONCLUSION

For these reasons, this Court should grant PDVH's motion for summary judgment.

Dated: March 28, 2025

WACHTELL, LIPTON, ROSEN & KATZ

By: /s/ Amy R. Wolf
Richard G. Mason
Amy R. Wolf
Michael H. Cassel
51 West 52nd Street
New York, New York 10019
(212) 403-1000
RGMason@wlrk.com
ARWolf@wlrk.com
MHCassel@wlrk.com

*Attorneys for Amici Curiae ConocoPhillips
Petrozuata B.V., ConocoPhillips Gulf of
Paria B.V., Phillips Petroleum Company
Venezuela Limited, and ConocoPhillips
Hamaca B.V.*

MOLOLAMKEN LLP

By: /s/ Justin M. Ellis
Steven F. Molo
Justin M. Ellis
Mark W. Kelley
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
Tel.: (212) 607-8170
smolo@mololamken.com
jellis@mololamken.com
mkelley@mololamken.com

*Counsel for Amicus Curiae Red Tree
Investments, LLC*

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Miguel A. Estrada
Miguel A. Estrada[*]
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
Fax: (202) 467-0539

Robert L. Weigel
Jason W. Myatt
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
Fax: (212) 351-4035

*Counsel for Amicus Curiae Crystallex
International Corporation*

ALSTON & BIRD, LLP

By: /s/ Alexander A. Yanos
Alexander A. Yanos
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
(Tel) 212-210-9400
(Fax) 212-210-9444
alex.yanos@alston.com

*Counsel for Amicus Curiae Huntington
Ingalls Incorporated*

---

[*] E-signatures are used with the consent of all parties in compliance with S.D.N.Y. ECF Rule 8.5.

**CERTIFICATE OF SERVICE**

I hereby certify that this document has been electronically filed and served using the Court's ECF System on March 28, 2025.

*/s/ Miguel A. Estrada*
Miguel A. Estrada

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)**

I hereby certify that this brief complies with the word-count limit set forth in Local Rule

7.1(c) because it contains 4,486 words, excluding the caption, table of contents, table of authorities,

signature block, and certificates.  In preparing this certification, I have relied on the word count of

the word-processing system used to prepare this brief.


/s/ *Miguel A. Estrada*
Miguel A. Estrada